IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| BIAX CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MOTOROLA, INC., | § | |
| HEWLETT-PACKARD COMPANY, | § | CIVIL ACTION NO. 1:10-cv-3013-PAB-KLM |
| CISCO SYSTEMS, INC., | § | |
| CANON U.S.A., INC., | § | JURY |
| CANON, INC., | § | |
| BROTHER INTERNATIONAL | § | |
| CORPORATION, | § | |
| BROTHER INDUSTRIES, LTD., | § | |
| RICOH AMERICAS CORPORATION, | § | |
| and RICOH COMPANY, LTD., | § | |
| | § | |
| Defendants. | § | |

## HEWLETT-PACKARD COMPANY'S ANSWER AND COUNTERCLAIMS TO BIAX CORPORATION'S COMPLAINT FOR PATENT INFRINGEMENT

Defendant Hewlett-Packard Company ("HP") hereby responds to the Original Complaint for Patent Infringement (the "Complaint") filed by Plaintiff BIAX Corporation ("BIAX") as follows:

## INTRODUCTION

1.     HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1, and therefore denies them.

## THE PARTIES

2.     HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies them.

3.     HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and therefore denies them.

4.      HP admits that it is a Delaware corporation and has its principal place of business at 3000 Hanover Street, Palo Alto, California 94304.  HP also admits that it is qualified to do business in Colorado, and that it has appointed The Corporation Company, 1675 Broadway, Suite 1200, Denver, Colorado 80202, as its agent for service of process.  HP is without knowledge sufficient to admit or deny the remaining allegations of paragraph 4, and therefore denies them.

5.      The allegations in paragraph 5 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

6.      The allegations in paragraph 6 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

7.      The allegations in paragraph 7 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

8.      The allegations in paragraph 8 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

9.      The allegations in paragraph 9 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

10.     The allegations in paragraph 10 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

## JURISDICTION AND VENUE

11.     HP admits that this is an action for patent infringement and that, pursuant to 28 U.S.C. §§ 1331 and 1338, federal district courts have subject matter jurisdiction of patent infringement actions.

12.     HP further admits that this Court has personal jurisdiction over it, but is without sufficient information as to admit or deny whether this Court has personal jurisdiction over any other defendants and therefore denies those allegations to the extent they are directed towards other defendants.

13.     HP denies that it has committed and/or induced acts of patent infringement in this district, and further denies that it has committed and/or induced any acts in this or any other jurisdiction which would give rise to any cause of action by BIAX.  HP is without knowledge or information sufficient to form a belief as to the allegations in paragraph 13 directed to the other defendants, and therefore HP denies those allegations.   HP denies all other allegations in paragraph 13.

14.     Subject to its rights under 28 U.S.C. §§ 1404 and 1498(a), HP admits that venue is proper in the Colorado for purposes of this particular action.

## HP'S REPLY TO COUNT I

15.     HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and therefore denies them.

16.     HP admits that U.S. Patent No. 5,517,628 ("the '628 patent") is entitled "Computer with Instructions that Use an Address Field to Select Among Multiple Condition

Code Registers" and was issued on May 14, 1996.  HP is without knowledge sufficient to admit or deny the remaining allegations of paragraph 16, and therefore denies them.

17.     HP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17, and therefore denies them.

18.     The allegations in paragraph 18 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

19.     The allegations in paragraph 19 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

20.     The allegations in paragraph 20 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

21.     The allegations in paragraph 21 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

22.     The allegations in paragraph 22 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

23.     The allegations in paragraph 23 are directed to other defendants; as such, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

24.     HP denies that it has infringed claims of the '628 patent in this judicial district or in any district by making, using, selling, offering for sale, and/or importing into the United States without authority products that infringe and/or perform processes that infringe claims of the '628 patent.  HP denies all other allegations in paragraph 24.

25.     HP admits that it sold and continues to sell printers.  HP denies the remaining allegations of paragraph 25.

26.     HP denies the allegations in paragraph 26.

27.     HP denies the allegations in paragraph 27.

28.     HP denies the allegations in paragraph 28.

29.     As the allegations in paragraph 29 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

30.     As the allegations in paragraph 30 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

31.     As the allegations in paragraph 31 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

32.     As the allegations in paragraph 32 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

33.     As the allegations in paragraph 33 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

34.     As the allegations in paragraph 34 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

35.     As the allegations in paragraph 35 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

36.     As the allegations in paragraph 36 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

37.     As the allegations in paragraph 37 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

38.     As the allegations in paragraph 38 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

39.     As the allegations in paragraph 39 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

40.     As the allegations in paragraph 40 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

41.     As the allegations in paragraph 41 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

42.     As the allegations in paragraph 42 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

43.     As the allegations in paragraph 43 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

44.     As the allegations in paragraph 44 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

45.     As the allegations in paragraph 45 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

46.     As the allegations in paragraph 46 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

47.     As the allegations in paragraph 47 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

48.     As the allegations in paragraph 48 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

49.     As the allegations in paragraph 49 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

**HP'S REPLY TO COUNT II**

50.     HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50, and therefore denies them.

51.     HP admits that U.S. Patent No. 6,253,313 ("the '313 patent") is entitled "Parallel Processor System for Processing Natural Concurrencies and Method Therefor" and was issued on June 26, 2001.  HP is without knowledge sufficient to admit or deny the remaining allegations of paragraph 51, and therefore denies them.

52.     HP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52, and therefore denies them.

53.     As the allegations in paragraph 53 are directed to other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

54.     As the allegations in paragraph 54 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

55.     As the allegations in paragraph 55 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

56.     As the allegations in paragraph 56 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

57.     As the allegations in paragraph 57 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

58.     As the allegations in paragraph 58 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

59.     As the allegations in paragraph 59 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

60.     HP denies the allegations in paragraph 60.

61.     HP denies the allegations in paragraph 61.

62.     HP denies the allegations in paragraph 62.

63.     HP denies the allegations in paragraph 63.

64.     HP denies the allegations in paragraph 64.

65.     As the allegations in paragraph 65 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

66.     As the allegations in paragraph 66 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

67.     As the allegations in paragraph 67 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

68.     As the allegations in paragraph 68 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

69.     As the allegations in paragraph 69 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

70.     As the allegations in paragraph 70 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

71.     As the allegations in paragraph 71 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

72.     As the allegations in paragraph 72 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

73.     As the allegations in paragraph 73 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

74.     As the allegations in paragraph 74 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

75.     As the allegations in paragraph 75 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

76.     As the allegations in paragraph 76 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

77.     As the allegations in paragraph 77 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

78.     As the allegations in paragraph 78 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

79.     As the allegations in paragraph 79 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

80.     As the allegations in paragraph 80 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

81.     As the allegations in paragraph 81 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

82.     As the allegations in paragraph 82 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

83.     As the allegations in paragraph 83 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

84.     As the allegations in paragraph 84 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

85.     As the allegations in paragraph 85 are directed towards other defendants, HP is without knowledge or information sufficient to form a belief as to the truth of the allegations therein, and therefore denies them.

## **PRAYER FOR RELIEF**

HP denies that BIAX is entitled to any relief from HP and specifically denies all of the allegations and prayers for relief contained in paragraphs A-E of the "Prayer for Relief" section of the Complaint.  HP is without knowledge sufficient to form a belief as to the truth of the allegations with respect to the other Defendants contained in BIAX's prayer for relief, and therefore denies them.

## JURY DEMAND

HP admits that BIAX has requested a trial by jury.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE:  NON-INFRINGEMENT

86.    HP has not engaged in any acts that would constitute infringement of, contributory infringement of, or inducement to infringe any valid claim of the '628 and '313 patents (collectively, the "Asserted Patents").

### SECOND AFFIRMATIVE DEFENSE:  INVALIDITY

87.    The Asserted Patents and each of the claims of the Asserted Patents are invalid or unenforceable for failing to comply with the statutory provisions for patentability and validity set forth in Title 35 of the United States Code, including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103, 112, and 132:

### THIRD AFFIRMATIVE DEFENSE:  PROSECUTION HISTORY ESTOPPEL AND PROSECUTION DISCLAIMER

88.    BIAX's enforcement of one or more of the claims of the Asserted Patents is barred, in whole or in part, by the doctrines of prosecution history estoppel and prosecution disclaimer.

### FOURTH AFFIRMATIVE DEFENSE:  LACHES AND WAIVER

89.    BIAX's enforcement of one or more claims of the Asserted Patents is barred, in whole or in part, by the equitable doctrines of laches and/or waiver.

### FIFTH AFFIRMATIVE DEFENSE:  INJUNCTION NOT WARRANTED

90.    BIAX is not entitled to a permanent injunction because: (1) BIAX has not suffered nor will it suffer irreparable harm because of HP's conduct; (2) any harm to BIAX would be outweighed by the harm to HP if an injunction were entered; (3) BIAX has an adequate

remedy at law even if BIAX were to prevail in this action; (4) the public interest would not be served by an injunction; and (5) BIAX is estopped from seeking an injunction.

### SIXTH AFFIRMATIVE DEFENSE:  35 U.S.C. § 288

91.     BIAX's request for relief is barred or otherwise limited by 35 U.S.C. § 288.

### SEVENTH AFFIRMATIVE DEFENSE:  28 U.S.C. § 1498(a)

92.     If BIAX is entitled to any relief for alleged infringement of the Asserted Patents, some or all of that relief is limited under 28 U.S.C. § 1498(a).

### EIGHTH AFFIRMATIVE DEFENSE:  DUE PROCESS

93.     Any award of enhanced or increased damages for willful infringement as pled in the Complaint would violate the due process clause of the Fourteenth Amendment.

### NINTH AFFIRMATIVE DEFENSE:  NO WILLFUL INFRINGEMENT

94.     BIAX is not entitled to enhanced or increased damages for willful infringement, because HP has not engaged in any conduct that meets the applicable standard for willful infringement.

### TENTH AFFIRMATIVE DEFENSE:  NON-INFRINGING USE

95.     The allegedly infringing products made, used, sold, offered for sale, or imported into the United States by HP have substantial non-infringing uses and, therefore, do not contribute to the infringement of the Asserted Patents.

### ELEVENTH AFFIRMATIVE DEFENSE:  INDIRECT INFRINGEMENT

96.     To the extent that BIAX asserts that HP indirectly infringes any claim of the Asserted Patents, HP is not liable to BIAX for the acts alleged to have been performed before HP knew that its actions could cause direct infringement.

## TWELFTH AFFIRMATIVE DEFENSE:  RESERVATION

97.     HP reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, which may now exist or in the future may be available based on the discovery and further factual investigation in this case.

## THIRTEENTH AFFIRMATIVE DEFENSE:  INEQUITABLE CONDUCT

98.     The '628 and '313 patents are unenforceable due to inequitable conduct committed during their prosecution.  On information and belief, the named inventors, attorneys, or agents who prepared or prosecuted the applications leading to the issuance of the '628 and '313 patents, or other persons who were substantively involved in the preparation or prosecution of these applications (collectively, the "Applicants") were aware of information material to the patentability of the claims of the '628 and '313 patents, but withheld that information from the U.S. Patent and Trademark Office (the "PTO") with intent to deceive the PTO.  In support of this affirmative defense, HP incorporates by reference paragraphs 124 through 156, *infra*.

## COUNTERCLAIMS

99.     Counter-Claimant Hewlett-Packard Company ("HP") hereby alleges the following in support of its counterclaims against Counter-Defendant BIAX Corporation ("BIAX"):

## PARTIES

100.    HP is a corporation organized and existing under the laws of the state of Delaware.  HP's principal place of business is 3000 Hanover Street, Palo Alto, California 95014.

101.    On information and belief, BIAX is a Colorado corporation organized and existing under the laws of the state of Colorado.  BIAX maintains its principal place of business at 1942 Broadway, Suite 404, Boulder, Colorado 80302.

## JURISDICTION AND VENUE

102.    These counterclaims arise under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and 28 U.S.C. 1498(a).  An actual, substantial, and continuing justiciable controversy exists between HP and BIAX that requires a declaration of rights by this Court.

103.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1338.

104.    The Court has personal jurisdiction over BIAX in light of BIAX's filing a complaint in this district alleging infringement of U.S. Patent Nos. 5,517,628 and 6,253,313.

105.    To the extent that this action remains in this district, venue is appropriate for HP's counterclaims because BIAX has consented to the propriety of venue in this Court by filing its claims for patent infringement in this Court.

## FACTUAL BACKGROUND

106.    On or about December 13, 2010, BIAX filed or caused to be filed an Original Complaint (the "Complaint") initiating a patent infringement action against, *inter alia*, HP.

107.    In its Complaint, BIAX alleges*, inter alia*, that HP infringed and continues to infringe two patents owned by BIAX—U.S. Patent Nos. 5,517,628 and 6,253,313 (collectively, the "Asserted Patents").

108.    For each patent, the Complaint accused HP of "making, using, selling, offering for sale, and/or importing into the United States without authority products that infringe one or more claims of the '313 patent," having "committed and continu[ing] to commit acts of contributory infringement" by having "made, used sold offered to sell, and/or imported" certain HP printers, and having "induced and continu[ing] to induce others to infringe" the asserted patents by "actively and knowingly aiding and abetting others to infringe" the asserted patents.

In light of the Complaint, HP hereby pleads the following counterclaims for declaratory judgment:

## FIRST COUNTERCLAIM

### DECLARATORY JUDGMENT—NON-INFRINGEMENT OF THE ASSERTED PATENTS

109.     HP incorporates by reference the allegations in paragraphs 100 through 108, inclusive.

110.     An actual, justiciable controversy exists between HP and BIAX with respect to each of the Asserted Patents.

111.     On or about December 13, 2010, BIAX filed the Complaint initiating a patent infringement action, alleging, *inter alia*, that HP had infringed the Asserted Patents.

112.     BIAX has alleged that it is the owner, by assignment, of the Asserted Patents.

113.     BIAX has further alleged, and continues to allege, that HP makes, uses, sells, offers to sell and/or imports products that infringe the Asserted Patents.

114.     HP denies BIAX's allegations with respect to infringement by HP.  HP does not make, use, sell, offer to sell and/or import a product and/or a method thereof, that infringe any valid claim of the Asserted Patents.  Nor does HP directly infringe, either literally or under the doctrine of equivalents, or indirectly infringe, by inducing or contributing to the infringement of, any valid claim of any of the Asserted Patents.

115.     Therefore, HP desires and requests a judicial determination and declaration of the respective rights and duties HP and BIAX, based on the disputes recited in this answer.

116.     Moreover, this is an exceptional case entitling HP to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## SECOND COUNTERCLAIM

## DECLARATORY JUDGMENT—INVALIDITY OF THE ASSERTED PATENTS

117.    HP incorporates by reference the allegations in paragraphs 100 through 116, inclusive.

118.    This is a counterclaim for declaratory judgment of invalidity of each claim of the Asserted Patents.

119.    On or about December 13, 2010, BIAX filed the Complaint initiating a patent infringement action, alleging, *inter alia*, that HP had infringed the Asserted Patents.

120.    All claims of the Asserted Patents are invalid because they fail to comply with the conditions and requirements for patentability set forth in 35 U.S.C. § 1 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, 112, 115, 116, 118, and 132.

121.    Accordingly, there exists an actual, justiciable controversy between HP and BIAX with respect to the validity of the Asserted Patents.  Absent a declaration of invalidity, BIAX will continue to wrongfully assert the Asserted Patents against HP and their products and, thereby, cause HP irreparable harm.

122.    Therefore, HP desires and requests a judicial determination and declaration of the respective rights and duties of HP and BIAX, based on the disputes recited in this answer.

123.    Moreover, this is an exceptional case entitling HP to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## THIRD COUNTERCLAIM

## DECLARATORY JUDGMENT—INEQUITABLE CONDUCT

124.    The Asserted Patents are unenforceable due to inequitable conduct committed during their prosecution.  On information and belief, the named inventors, attorneys, or agents who prepared or prosecuted the applications leading to the issuance of the Asserted Patents, or

other persons who were substantively involved in the preparation or prosecution of these applications (collectively, the "Applicants") were aware of information material to the patentability of the claims of the Asserted Patents, but withheld that information from the U.S. Patent and Trademark Office (the "PTO") with intent to deceive the PTO.

125.    Specifically, one or both of the Asserted Patents are unenforceable due to BIAX's inequitable conduct in affirmatively misrepresenting and/or failing to disclose the addition of new matter during the prosecution of U.S. Patent Application Serial No. 06/794,221 ("the '221 application"), which issued into U.S. Patent No. 4,847,755 ("the '755 patent").    Upon information and belief, such affirmative misrepresentations and/or failure of disclosures were made with the intent to deceive or mislead the USPTO.

126.    The '221 application is the original parent application to both the Asserted Patents.

127.    During the prosecution of the original patent application of the Asserted Patents, BIAX amended the original disclosure through the transmittal of a substitute specification ("Substitute Specification").  BIAX transmitted the Substitute Specification to the USPTO on or about June 13, 1988, more than two-and-a-half years after the original filing of the '221 application, but before receiving a notice of allowance.  On information and belief, the transmittal of the Substitute Specification coincided with the hiring of new lead patent prosecution attorney, Gary A. Walpert.  BIAX stated that the Substitute Specification was made to correct typographical errors and inconsistencies and delete a description of the prior art that was otherwise of record.  BIAX further stated that "certain obvious errors, which are clear from a reading and understanding of the application as filed, have been corrected to avoid the necessity of a later reader having to perform the same ordinary corrective functions and to provide thereby

a clearer and more accurate description of the invention."  BIAX stated that "[n]o new matter has been added."

128.    In response to an office action dated September 22, 1988, Walpert filed a declaration under 37 C.F.R. § 1.125 attesting that "no new matter has been added to the application by the filing of or in the substitute specification."  He also asserted that the "changes, as noted in my previously filed paper, relate to the deletion of the section on prior art, the correction of a large number of typographical errors, as well as some inconsistencies which were apparent to me upon a normal reading of the application."

129.    Additionally, Walpert stated in his response to the examiner's office action that "[i]nasmuch as all of my understanding of the details of the disclosed invention at that time came from the application itself, my rearrangement and revisions of the application could not then constitute 'new matter' since, not being an inventor and not working in the computer field as an engineer or scientist, my own understanding (in addition to that which was generally known in the art), came solely from the application as filed. . . . Based on the above, it is my understanding that no new matter has been added to the application."

130.    Contrary to BIAX's representations, the Substitute Specification added new matter to the '221 application.  For example, the term "identical processor elements" was used repeatedly and consistently throughout the original specification, but in the Substitute Specification, that phrase was systematically edited—either by removing the adjective "identical" or by adding phraseology suggesting "identical" was merely a description of a particular embodiment.  BIAX's representations that the Substitute Specification did not add new matter and was made merely to correct typographical errors and inconsistencies were false and intentionally misleading.

131.   The findings of Judge Harris laid out in the following paragraphs further establish that the '755 and '945 patents, and in turn the related Asserted Patents, are unenforceable for inequitable conduct in connection with the addition of new matter:

132.   "Dr. Walpert's statements to the examiner that the substitute specification contained no new matter were affirmative misrepresentations because the substitute specification impermissibly broadened the scope of the originally-filed patent application in violation of the prohibition against new matter."  (Initial Determination at 75.)

133.   "Dr. Walpert's failure to inform the examiner that he had removed certain statements, and modified others in the originally filed specification that had explicitly limited the claims to identical, context-free processor elements [was] material."  (Initial Determination at 75.)

134.   "A reasonable examiner would have found such information important as it goes straight to the heart of whether the substitute specification violated the statutory prohibition against new matter. In fact, if there was any doubt whether such information would have been of import to a reasonable examiner, the USPTO examiner examining the '755 patent application specifically stated in the second office action that '[c]laims 1-6, 8, 10, 11, 14-17, 22-24, 24 [sic], 25, 26, 36-39, 60-68, and 70-76 are patentable over the art of record and would be allowable it [sic] the substitute specification contains no new matter.' JX-6 at JCFH0682.  Furthermore, the information would have been important to a reasonable examiner because it informs the examiner about the proper scope of the claims and consequently the proper universe of potentially invalidating prior art."  (Initial Determination at 75–76.)

135.   "There can be no question that the communications between Dr. Walpert and Mr. Gluck illustrate that Dr. Walpert was well aware that the originally filed '221 application

contained numerous limiting statements indicating that the disclosed invention used context free processor elements.  The same correspondence also shows that Dr. Walpert knew that a court might find the claims of the '221 application constrained by those express limiting statements.  Thus, the evidence shows, Dr. Walpert set out to draft a substitute specification that, inter alia, would reword those portions of the application so that the statements would not limit the invention to context free processor elements."   (Initial Determination at 80.)   These facts establish an intent to deceive the USPTO.

136.    These communications include a 13-page report from Walpert to Gluck "summarizing his conclusions, detailing the basis of his views, and providing a checklist of recommendations."  "In the report, Dr. Walpert discusses the petition to advance prosecution of the '221 application that was originally filed by attorney Robert Dorr" and "[i]n discussing the petition to advance prosecution, Dr. Walpert acknowledges that the petition contains explicit statements 'relating to, for example, 'the invention' including means for adding logical processor numbers and instruction firing times to each instruction, or having a plurality of identical and context free processors.'   RX-635C at BIA105394.   According to Dr. Walpert, '[t]hese statements, under a so-called file wrapper estoppel argument, could unduly limit the scope of the claims.  Thus these limitations could be read into a claim even if the claim did not explicitly include them.'  *Id*."  (Initial Determination at 76–77.)

137.    "Dr. Walpert notes in his report that the originally-filed application also contains statements that may limit the claims."  (Initial Determination at 77.)

138.    "For example, Dr. Walpert states [in his report] that:  The basis for concluding that the claims presently on file could be unduly limited are statements which have been made in the application as well as the petition which was filed before and rejected by the Patent and

Trademark Office.  For example, the application when it refers to 'the patent invention' states '[t]he added intelligence includes a logical processor number and an instruction firing time … The results of this static allocation are executed on a system containing a plurality of identical processor elements. These processor elements are characterized by the fact that they contain no execution state information from the execution of previous instructions, i.e., they are context free.' (application page 7, lines 19-21 and 27-33). . . . Then, further, "The processor elements of the present invention are context free processors that support a RISC-like instruction set. The term 'context free' means that the processor elements contain no state information. . .' (application page 14, lines 20-24). And, in the Summary of the Invention, "The present invention . . . further executes the basic blocks containing the added intelligence on a system containing a plurality of identical processor elements, each of which does not retain execution state information from prior operations.  Hence all processor elements are context free.'  (application, page 28, lines 8-13 and 20-25). *Id.* at BIA1044396."  (Initial Determination at 77.)

139.    In addition, "Dr. Walpert explicitly acknowledges that '[o]ne can cite many more examples in the application and the petition which state unequivocally that the invention requires . . . processors which are context free.'  *Id.* at BIA1054397. According to Dr. Walpert, a Court could reasonably interpret each claims as including, implicitly or explicitly, a hardware structure which includes only context free processor elements. (I understand there are a number of claims, for example claim 18, which do not specify the processor hardware at all. These claims, however, could still be limited, by a Court, to an application which uses, for example, context free processors.).  *Id.* at BIA1054396.  Thus, Dr. Walpert recommends in the report 'rewording those portions of the application which may tend to unduly limit the claims, for example, when it

- 23 -

is said that all processor elements are context free.' *Id.* at BIA1054394." (Initial Determination at 77–78.)

140.    "Approximately a month and a half after Dr. Walpert sent his report to Mr. Gluck, Dr. Walpert sent Mr. Gluck a draft of the revised patent application, which appears to have done just what Dr. Walpert recommended, 'rewording . . . the application' in an attempt to prevent it from limiting the scope of the claims. See RX-627C." (Initial Determination at 78.)

141.    "Dr. Walpert stated in the letter accompanying the draft that [t]he description has been edited, in major respects, to remove the requirement of context free and/or identical processors, to better recognize the applicability to pipelined processing, to remove the lengthy description of the prior art, and to better clarify the description (in particular, the operation of the hardware) and the claims. *Id.*" (Initial Determination at 78.)

142.    "Three days later, Mr. Gluck provided Dr. Walpert with various edits, granting Dr. Walpert 'artistic license to include or exclude as much as you want,' but noting that 'the primary focus of all this is to qualify the use of context-free PE's.' RX-628C." (Initial Determination at 78.)

143.    "Although the evidence clearly illustrates that Dr. Walpert was well aware of the significance of the limiting statements in the originally filed application and the potential for enforcement of those limiting statements through the legal doctrines of prosecution history estoppel and disclaimer, Dr. Walpert nevertheless filed the substitute specification without bringing any of the substantive changes to the examiner's attention." (Initial Determination at 80–81.)

144.    "In fact, in contrast with Dr. Walpert's statement to Mr. Gluck that the 'description has been edited, in major respects, to remove the requirement of context free and/or

identical processors, to better recognize the applicability to pipelined processing, to remove the lengthy description of the prior art, and to better clarify the description (in particular, the operation of the hardware) and the claims,' Dr. Walpert only informed the examiner that the substitute specification corrected numerous typographical errors, removed the description of the prior art, and corrected certain obvious errors." (Initial Determination at 81.)

145.   "Apparently not entirely satisfied by Dr. Walpert's explanation regarding the changes made to the substitute specification, the patent examiner told the applicants to comment in their next response why the extensive revisions to the specification do not constitute new matter." (Initial Determination at 81.)

146.   "The evidence will not support a claim that Dr. Walpert misunderstood the examiner's request. After receiving the second office action, Dr. Walpert wrote the then President of BIAX, Mr. Raymond Livingstone. See RX-629C. In his letter to Mr. Livingstone, Dr. Walpert noted that the patent examiner 'is requiring that we explain why, in filing the substitute specification, no new matter has been added to the application.' *Id.* at BXITC0625889.  Dr. Walpert suggested that he and Mr. Livingstone 'should discuss the best way of meeting the Examiner's request for a 'road map' through the substitute specification regarding the new matter.' *Id.*" (Initial Determination at 81 & n.27.)

147.   "And yet, the evidence shows Dr. Walpert never provided the examiner with such an explanation. Instead, the evidence shows that Dr. Walpert attempted to placate the examiner by stating in his response to the second office action that 'if there is particular text with which the Examiner is concerned, I am more than willing to make the necessary comparisons.'" (Initial Determination at 81.)

148. "Dr. Walpert also tried to quell the examiner's new matter concerns by stating that the revisions made in the substitute specification could not constitute new matter, because all of his understanding of the invention came solely from the application as filed and because he was not an inventor and not working in the computer field as an engineer or scientist. Contrary to Dr. Walpert's statement, the evidence of record clearly shows that Dr. Walpert's understanding of the invention did not come solely from the application as filed (and that which was generally known in the art), but also from his communications and conversations with Mr. Gluck and 'various MCC summary documents.'" (Initial Determination at 81-82.)

149. "Furthermore, while Dr. Walpert's statement to the examiner that he was not an inventor or someone working in the computer field as an engineer or scientist may have been true on its face, it was nevertheless misleading as the evidence shows Dr. Walpert holds three electrical engineering degrees from MIT and is considered as someone 'above' one of ordinary skill in the art. Walpert Tr. 289:16-21, 370:8-12." (Initial Determination at 82.)

150. "Dr. Walpert's affirmative misrepresentations to the examiner that the substitute specification contained no new matter when in fact Dr. Walpert knowingly included several substantive changes in the substitute specification that enlarged the scope of the claims were highly material." (Initial Determination at 83.)

151. "Buried among a mountain of change in the substitute specification, Dr. Walpert deleted various limiting statements that unequivocally indicated that the invention as originally filed only used identical context free processor elements and modified other statements to indicate that what was once required was not but a mere embodiment of the invention." (Initial Determination at 83.)

152.    "Further, the manner in which Dr. Walpert assured and reassured the examiner that no new matter was included while simultaneously side-stepping the examiner's request for an explanation of why the extensive revisions do not constitute new matter shows a significant intent to deceive."  (Initial Determination at 83.)

153.    Both Asserted Patents claim priority to the '221 application — that issued as the '755 patent — and both Asserted Patents issued from a series of continuation and divisional applications related to the '221 application.

154.    Both Asserted Patents contain the same Substitute Specification as the '221 application.

155.    Therefore, BIAX's inequitable conduct in prosecuting the '221 application renders the Asserted Patents unenforceable.

156.    HP believes that, after a reasonable opportunity for further investigation and discovery, it will be able to demonstrate additional bases for inequitable conduct.

## DEMAND FOR JURY TRIAL

157.    HP hereby demands a trial by jury of all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, HP prays for judgment on BIAX's claims as follows:

(a)    that BIAX's claims be dismissed, with prejudice, and that BIAX take nothing;

(b)    that judgment be entered declaring that U.S. Patent Nos. 5,517,628 and 6,253,313 are invalid, void, unenforceable, without any force or effect, and have not been infringed by HP;

(c)      that judgment be entered declaring that the inventors, attorneys, or agents who prepared or prosecuted the applications leading to the issuance of U.S. Patent Nos. 5,517,628 and 6,253,313 committed inequitable conduct, rendering the patents unenforceable;

(d)      that judgment be entered declaring that this is an exceptional case and awarding HP its reasonable costs and attorneys' fees;

(e)      that an order be entered enjoining BIAX, its officers, directors, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from alleging, asserting, or stating that HP has infringed or is infringing U.S. Patent Nos. 5,517,628 and 6,253,313 or has used or is using any alleged invention claimed therein, or that the patents are valid or enforceable;

(f)      that HP be awarded its costs and attorneys' fees in this matter;

(g)      that the Court enter an order placing reasonable but effective restrictions on future transactions of BIAX to assure its ability to pay promptly the judgment entered against it in this action; and

(h)      that HP be awarded such other relief as the Court deems just and proper.

Dated: February 3, 2011

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

_____/s/ Rick L. Rambo_____
Rick L. Rambo
Bar No. 29257
rrambo@morganlewis.com
David J. Levy
Texas Bar No. 12264850
dlevy@morganlewis.com
Preetam Shingavi
Texas Bar No. 24067865
pshingavi@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
713.890.5000 Telephone
713.890.5001 Facsimile

ATTORNEYS FOR DEFENDANT
HEWLETT-PACKARD COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on all counsel via the Court's CM/ECF system on February 3, 2011.

_____/s/ Rick L. Rambo_____
Rick L. Rambo