**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-03013-PAB -KLM

BIAX CORPORATION,

      Plaintiff,

vs.

MOTOROLA, INC.,
HEWLETT-PACKARD COMPANY,
CISCO SYSTEMS, INC.,
CANON U.S.A., INC.,
CANON, INC.,
BROTHER INTERNATIONAL CORPORATION,
BROTHER INDUSTRIES, LTD.,
RICOH AMERICAS CORPORATION, and
RICOH COMPANY, LTD.,

      Defendants.

---

**DEFENDANT CISCO SYSTEMS, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS IN RESPONSE TO COMPLAINT FOR PATENT INFRINGEMENT**

---

Defendant Cisco Systems, Inc. ("Cisco") answers the Complaint for Patent

Infringement of Plaintiff BIAX Corporation ("BIAX") as follows.  Cisco's specific responses to

the individually numbered allegations of the Complaint are set forth below.

**INTRODUCTION**

1.  Cisco admits that BIAX's pleading purports to be a complaint for patent

infringement, but denies that Cisco has infringed any valid and enforceable patent claim or that

BIAX is entitled to any relief.  Cisco is without knowledge or information sufficient to form a

belief as to the truth of any remaining allegations of paragraph 1, and therefore denies them.

## THE PARTIES

2.   On information and belief, Cisco admits that BIAX alleges it is a corporation organized and existing under the laws of Colorado with its principal place of business at 1942 Broadway, Suite 404, Boulder, Colorado 80302.

3.   The allegations of paragraph 3 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and therefore denies them.

4.   The allegations of paragraph 4 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4, and therefore denies them.

5.   Cisco admits that it is a corporation organized and existing under the laws of California, and maintains a principal place of business at 170 West Tasman Drive, San Jose, CA 95134.  Cisco admits that it is registered with the Colorado Secretary of State and has appointed Corporation Service Company, 1560 Broadway Ste 2090, Denver, CO 80202 as its agent for service of process.  Cisco admits that it has offices or facilities within this judicial district, including one located at 4600 South Ulster Street, Denver, CO 80237 and another located at 5330 Airport Boulevard, Boulder, CO 80301.  Cisco denies any remaining allegations of paragraph 5.

6.   The allegations of paragraph 6 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6, and therefore denies them.

7.   The allegations of paragraph 7 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore denies them.

8.   The allegations of paragraph 8 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies them.

9.   The allegations of paragraph 9 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.

10. The allegations of paragraph 10 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies them.

## JURISDICTION AND VENUE

11. These allegations set forth legal conclusions to which no response is required. Cisco admits that BIAX's complaint purports to allege infringement under the United States patent laws.  Cisco denies any remaining allegations in paragraph 11.

12. These allegations set forth legal conclusions to which no response is required. Cisco admits that this Court has subject matter jurisdiction over patent law claims.  Cisco denies any remaining allegations of paragraph 12.

13. These allegations set forth legal conclusions to which no response is required. Cisco admits that this Court has personal jurisdiction over it in this particular action.  To the extent the remaining allegations of paragraph 13 are directed to Cisco, they are denied.  To the

extent the allegations of paragraph 13 are directed to other entities, Cisco lacks sufficient information to admit or deny the allegations of paragraph 13, and therefore denies them.

14. This paragraph sets forth legal conclusions to which no response is required. Cisco lacks sufficient information to admit or deny the allegations and therefore denies them on that basis.

**FIRST CLAIM FOR RELIEF**
**PATENT INFRINGEMENT OF U.S. PATENT NO. 5,517,628**
**(35 U.S.C. § 271)**

15. The answers set forth in the foregoing paragraphs 1 through 14 are incorporated by reference into Cisco's answers to BIAX's First Claim For Relief.

16. Cisco admits that U.S. Patent No. 5,517,628 (the "'628 patent") is entitled "Computer With Instructions That Use An Address Field To Select Among Multiple Condition Code Registers," and that the face of the '628 patent bears an issuance date of May 14, 1996. Cisco admits that, on its face, the '628 Patent lists Gordon E. Morrison, Christopher B. Brooks, and Frederick G. Gluck as the inventors. Cisco admits that Exhibit A purports to be a copy of the '628 patent. Cisco is without knowledge or information sufficient to form a belief as to whether the '628 patent has been duly and legally assigned to BIAX, and therefore denies this allegation. Cisco denies any remaining allegations of paragraph 16.

17. Cisco admits that Ex Parte Reexamination Certificate No. 5,517,628 C1 bears an issuance date of December 23, 2008 and lists reexamination request No. 90/008,101, Jun. 20, 2006. Cisco admits that the file wrapper for reexamination request No. 90/008,101 contains an order dated August 18, 2006 granting the request for reexamination of the '628 patent. Cisco admits that Exhibit B purports to be a copy of Ex Parte Reexamination Certificate No. 5,517,628 C1. Cisco denies any remaining allegations of paragraph 17.

4

18. The allegations of paragraph 18 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18, and therefore denies them.

19. The allegations of paragraph 19 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19, and therefore denies them.

20. The allegations of paragraph 20 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, and therefore denies them.

21. The allegations of paragraph 21 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21, and therefore denies them.

22. The allegations of paragraph 22 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22, and therefore denies them.

23. The allegations of paragraph 23 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23, and therefore denies them.

24. The allegations of paragraph 24 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24, and therefore denies them.

25. The allegations of paragraph 25 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25, and therefore denies them.

26. The allegations of paragraph 26 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26, and therefore denies them.

27. The allegations of paragraph 27 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27, and therefore denies them.

28. The allegations of paragraph 28 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28, and therefore denies them.

29. Cisco denies the allegations of paragraph 29.

30. Cisco admits that it acquired Scientific Atlanta in 2006.  Cisco denies any remaining allegations of paragraph 30.

31. Cisco denies the allegations of paragraph 31, including to the extent the allegations include undefined patent terms or terms that have yet to be construed.

32. Cisco denies the allegations of paragraph 32.

33. Cisco denies the allegations of paragraph 33.

34. Cisco denies the allegations of paragraph 34.

35. The allegations of paragraph 35 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35, and therefore denies them.

36. The allegations of paragraph 36 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36, and therefore denies them.

37. The allegations of paragraph 37 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37, and therefore denies them.

38. The allegations of paragraph 38 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38, and therefore denies them.

39. The allegations of paragraph 39 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39, and therefore denies them.

40. The allegations of paragraph 40 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40, and therefore denies them.

41. The allegations of paragraph 41 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41, and therefore denies them.

42. The allegations of paragraph 42 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42, and therefore denies them.

43. The allegations of paragraph 43 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43, and therefore denies them.

44. The allegations of paragraph 44 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44, and therefore denies them.

45. The allegations of paragraph 45 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45, and therefore denies them.

46. The allegations of paragraph 46 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46, and therefore denies them.

47. The allegations of paragraph 47 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47, and therefore denies them.

48. The allegations of paragraph 48 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48, and therefore denies them.

49. The allegations of paragraph 49 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49, and therefore denies them.

**SECOND CLAIM FOR RELIEF**
**PATENT INFRINGEMENT OF U.S. PATENT NO. 6,253,313**
**(35 U.S.C. § 271)**

50. The answers set forth in the foregoing paragraphs 1 through 49 are incorporated by reference into Cisco's answers to BIAX's Second Claim For Relief.

51. Cisco admits that U.S. Patent No. 6,253,313 (the "'313 patent") is entitled "Parallel Processor System For Processing Natural Concurrencies And Method Therefor," and that the face of the '313 patent bears an issuance date of June 26, 2001. Cisco admits that, on its face, the '313 patent lists Gordon Edward Morrison, Christopher Bancroft Brooks, and Frederick George Gluck as the inventors. Cisco admits that Exhibit C purports to be a copy of the '313 patent. Cisco is without knowledge or information sufficient to form a belief as to whether the '313 patent has been duly and legally assigned to BIAX, and therefore denies this allegation. Cisco denies any remaining allegations of paragraph 51.

52. Cisco admits that Ex Parte Reexamination Certificate No. 6,253,313 C1 lists reexamination request No. 90/007,922, Feb. 9, 2006. Cisco admits that the file wrapper for reexamination request No. 90/007,922 contains an order dated March 17, 2006 granting the request for reexamination of the '313 patent. Cisco admits that Exhibit D purports to be a copy of a Notice of Intent to Issue a Reexamination Certificate and bears a date of May 29, 2008. Cisco denies any remaining allegations of paragraph 52.

53. Cisco admits that Ex Parte Reexamination Certificate No. 6,253,313 C1 bears an issuance date of November 11, 2008 and lists reexamination request No. 90/008,156, Oct. 20, 2006 and No. 90/007,922, Feb. 9, 2006. Cisco admits that the file wrapper for reexamination request No. 90/008,156 contains an order dated December 22, 2006 granting the request for reexamination of the '313 patent. Cisco admits that Exhibit E purports to be a copy of Ex Parte

Reexamination Certificate No. 6,253,313 C1.  Cisco denies any remaining allegations of paragraph 53.

54. The allegations of paragraph 54 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54, and therefore denies them.

55. The allegations of paragraph 55 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55, and therefore denies them.

56. The allegations of paragraph 56 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56, and therefore denies them.

57. The allegations of paragraph 57 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57, and therefore denies them.

58. The allegations of paragraph 58 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58, and therefore denies them.

59. The allegations of paragraph 59 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59, and therefore denies them.

60. The allegations of paragraph 60 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60, and therefore denies them.

61. The allegations of paragraph 61 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61, and therefore denies them.

62. The allegations of paragraph 62 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62, and therefore denies them.

63. The allegations of paragraph 63 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63, and therefore denies them.

64. The allegations of paragraph 64 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64, and therefore denies them.

65. Cisco denies the allegations of paragraph 65.

66. Cisco admits that it acquired Scientific Atlanta.  Cisco denies any remaining allegations of paragraph 66.

67. Cisco denies the allegations of paragraph 67, including to the extent the allegations include undefined patent terms or terms that have yet to be construed.

68. Cisco denies the allegations of paragraph 68.

69. Cisco denies the allegations of paragraph 69.

70. Cisco denies the allegations of paragraph 70.

71. The allegations of paragraph 71 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71, and therefore denies them.

72. The allegations of paragraph 72 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72, and therefore denies them.

73. The allegations of paragraph 73 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 73, and therefore denies them.

74. The allegations of paragraph 74 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74, and therefore denies them.

75. The allegations of paragraph 75 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 75, and therefore denies them.

76. The allegations of paragraph 76 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76, and therefore denies them.

77. The allegations of paragraph 77 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77, and therefore denies them.

78. The allegations of paragraph 78 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78, and therefore denies them.

79. The allegations of paragraph 79 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 79, and therefore denies them.

80. The allegations of paragraph 80 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 80, and therefore denies them.

81. The allegations of paragraph 81 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 81, and therefore denies them.

82. The allegations of paragraph 82 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82, and therefore denies them.

83. The allegations of paragraph 83 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83, and therefore denies them.

84. The allegations of paragraph 84 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 84, and therefore denies them.

85. The allegations of paragraph 85 are not directed to Cisco, and therefore no answer is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 85, and therefore denies them.

## BIAX'S PRAYER FOR RELIEF

These paragraphs set forth the statement of relief requested by BIAX to which no response is required. Cisco denies any allegations against it and denies that BIAX is entitled to any of the requested relief.

## BIAX'S DEMAND FOR JURY TRIAL

This paragraph sets forth BIAX's request for a jury trial to which no response is required.

## AFFIRMATIVE DEFENSES

Subject to the responses above, Cisco alleges and asserts the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below, subject to its responses above, Cisco specifically reserves all rights to allege additional affirmative defenses that become known through the course of discovery.

1.   Cisco does not infringe and has not infringed (not directly, contributorily, or by inducement) any claim of the '628 and '313 patents.

2.   The claims of the '628 and '313 patents are invalid, including for failure to satisfy one or more of the requirements of Sections 100 et seq. of Title 35 of the United States Code, including but not limited to Sections 102, 103, 112, and 132.

3.   The claims of the '628 and '313 patents are unenforceable as asserted, in whole or in part, by the doctrines of laches and/or estoppel, including but not limited to prosecution laches and prosecution history estoppel.

4.   The claims of the '628 and '313 patents are unenforceable due to inequitable conduct as specifically alleged below in Cisco's counterclaim no. 5, which is fully incorporated by reference.

5.   The claims of the '628 and '313 patents are unenforceable due to unclean hands as specifically alleged below in Cisco's counterclaim no. 6, which is fully incorporated by reference.

6.   BIAX's alleged damages are limited because it has not satisfied the requirements for obtaining damages under 35 U.S.C. § 287, and the limitations period further bars past damages claims.

7.   BIAX's claims for relief are limited by the doctrines of full compensation, exhaustion, and/or first sale, and BIAX is not entitled to a double recovery.

## COUNTERCLAIMS

Cisco, for the Counterclaims against BIAX and upon information and belief, state as follows:

## THE PARTIES

1.   Cisco Systems, Inc. ("Cisco") is a corporation organized and existing under the laws of the State of California.  Cisco's principal place of business is at 170 West Tasman Drive, San Jose, California, 95134.

2.   Plaintiff BIAX Inc. ("BIAX") alleges it is a corporation existing under the laws of Colorado with its principal place of business at 1942 Broadway, Suite 404, Boulder, Colorado 80302.

## JURISDICTION AND VENUE

3.   Subject to and without waiving any of Cisco's affirmative defenses and denials to the Complaint, Cisco alleges that this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1367, 1338(a), 2201, and 2202, and that venue for these Counterclaims is proper in this District.

4.   This Court has personal jurisdiction over BIAX.

## FACTUAL BACKGROUND

5.   In its Complaint, BIAX asserts that Cisco has infringed U.S. Patent Nos. 5,517,628 (the "'628 patent") and 6,253,313 (the "'313 patent").

6.   Among other things, the '628 and '313 patents are invalid and/or have not been and are not infringed by Cisco, directly or indirectly.  Additionally, as alleged herein, BIAX has engaged in misconduct rendering the patents unenforceable.

7.   Consequently, there is an actual case or controversy between the parties over the non-infringement, invalidity, and/or unenforceability of the '628 and '313 patents.

## COUNT ONE

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,517,628

8.   Cisco restates and incorporates by reference the allegations in paragraphs 1 through 7 of its Counterclaims.

9.   An actual case or controversy exists between Cisco and BIAX as to whether the '628 patent is not infringed by Cisco.

10. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights regarding the '628 patent.

11. Cisco has not infringed and does not infringe, directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '628 patent.

## COUNT TWO

## DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 5,517,628

12. Cisco restates and incorporates by reference the allegations in paragraphs 1 through 11 of its Counterclaims.

13. An actual case or controversy exists between Cisco and BIAX as to whether the '628 patent is invalid.

14. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights as to whether the '628 patent is invalid.

15. The claims of the '628 patent are invalid, including for failure to satisfy one or more of the requirements of Sections 100 et seq. of Title 35 of the United States Code, including but not limited to Sections 102, 103, 112 and 132.

## COUNT THREE

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,253,313

16. Cisco restates and incorporates by reference the allegations in paragraphs 1 through 15 of its Counterclaims.

17. An actual case or controversy exists between Cisco and BIAX as to whether the '313 patent is not infringed by Cisco.

18. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights regarding the '313 patent.

19. Cisco has not infringed and does not infringe, directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '313 patent.

## COUNT FOUR

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,253,313

20. Cisco restates and incorporates by reference the allegations in paragraphs 1 through 19 of their Counterclaims.

21. An actual case or controversy exists between Cisco and BIAX as to whether the '313 patent is invalid.

22. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights as to whether the '313 patent is invalid.

23. The claims of the '313 patent are invalid, including for failure to satisfy one or more of the requirements of Sections 100 et seq. of Title 35 of the United States Code, including but not limited to Sections 102, 103, 112, and 135.

## COUNT FIVE

### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE PATENTS-IN-SUIT DUE TO INEQUITABLE CONDUCT

24. Cisco restates and incorporates by reference the allegations in paragraphs 1 through 23 of the Counterclaims.

25. Individuals subject to the duty of candor under 37 C.F.R. § 1.56 ("Applicants"), including without limitation listed inventors and counsel Gary A. Walpert, engaged in inequitable conduct, including in connection with the addition of new matter with the intent to deceive the United States Patent and Trademark Office ("USPTO") in connection with the '628 and '313 patents.

26. The patents-in-suit are unenforceable, including for the reasons the Administrate Law Judge found the parent patents (U.S. Patent Nos. 4,847,755 (the "'755 patent") and 5,021,945 (the "'945 patent")) were unenforceable for inequitable conduct in the matter of *In*

*re Certain Digital Processors and Digital Processing Systems, Components Thereof, and Products Containing Same*, Investigation Number 337-TA-559 in the International Trade Commission (the "Philips ITC Investigation"). Cisco incorporates herein by reference the May 11, 2007 Initial Determination of Administrative Law Judge Sidney Harris finding the '755 and '945 patents unenforceable due to inequitable conduct in connection with the addition of new matter.

27. For example, the patents-in-suit are unenforceable due to Applicants' inequitable conduct in affirmatively misrepresenting and/or failing to disclose substantive changes to the specification that resulted in the introduction of new matter during the prosecution of the parent application to the patents-in-suit, U.S. Patent Application Serial No. 06/794,221 (the "'221 application"), which issued into the '755 patent. Upon information and belief, such affirmative misrepresentations and/or failure of disclosures were made with an intent to deceive or mislead the USPTO.

28. During the prosecution of the '221 application, Applicants amended the original disclosure through the transmittal of a substitute specification (the "substitute specification"). Applicants transmitted the substitute specification to the USPTO on or about June 13, 1988, more than two-and-a-half years after the original filing of the '221 application, but before receiving a notice of allowance. Applicants stated among other things that the substitute specification was made to correct typographical errors and inconsistencies and delete a description of the prior art that was otherwise of record. Applicants further stated that "certain obvious errors, which are clear from a reading and understanding of the application as filed, have been corrected to avoid the necessity of a later reader having to perform the same ordinary

corrective functions and to provide thereby a clearer and more accurate description of the invention."  Applicants stated that "[n]o new matter has been added."

29. In response to an office action dated September 22, 1988, Dr. Walpert filed a declaration under 37 C.F.R. § 1.125 attesting that "no new matter has been added to the application by the filing of or in the substitute specification."  He also asserted that the "changes, as noted in my previously filed paper, relate to the deletion of the section on prior art, the correction of a large number of typographical errors, as well as some inconsistencies which were apparent to me upon a normal reading of the application."

30. Additionally, Dr. Walpert stated in his response to the examiner's office action that

> [i]nasmuch as all of my understanding of the details of the disclosed invention at that time came from the application itself, my rearrangement and revisions of the application could not then constitute "new matter" since, not being an inventor and not working in the computer field as an engineer or scientist, my own understanding (in addition to that which was generally known in the art), came solely from the application as filed…. Based on the above, it is my understanding that no new matter has been added to the application.

31. Contrary to Applicants' representations, the changes made to the substitute specification were of a substantive nature.  These changes also added new matter to the '221 application.  For example, the adjective "identical" was either systematically removed from the term "identical processor elements," or the term "identical processor elements" was modified by the addition of phraseology attempting to suggest it was merely a description of a particular embodiment.  Applicants' representations that the substitute specification did not add new matter and was made merely to correct typographical errors and inconsistencies were false and intentionally misleading.

32. The following findings of Judge Harris confirm that the '755 and '945 patents, and in turn the related patents-in-suit, are unenforceable for inequitable conduct in connection with the addition of new matter:

33. "Dr. Walpert's statements to the examiner that the substitute specification contained no new matter were affirmative misrepresentations because the substitute specification impermissibly broadened the scope of the originally-filed patent application in violation of the prohibition against new matter." (Initial Determination at 75.)

34. "Dr. Walpert's failure to inform the examiner that he had removed certain statements, and modified others in the originally filed specification that had explicitly limited the claims to identical, context-free processor elements [was] material." (Initial Determination at 75.)

35. "A reasonable examiner would have found such information important as it goes straight to the heart of whether the substitute specification violated the statutory prohibition against new matter. In fact, if there was any doubt whether such information would have been of import to a reasonable examiner, the USPTO examiner examining the '755 patent application specifically stated in the second office action that '[c]laims 1-6, 8, 10, 11, 14-17, 22-24, 24 [sic], 25, 26, 36-39, 60-68, and 70-76 are patentable over the art of record and would be allowable it [sic] the substitute specification contains no new matter.' JX-6 at JCFH0682. Furthermore, the information would have been important to a reasonable examiner because it informs the examiner about the proper scope of the claims and consequently the proper universe of potentially invalidating prior art." (Initial Determination at 75-76.)

36. "There can be no question that the communications between Dr. Walpert and Mr. Gluck illustrate that Dr. Walpert was well aware that the originally filed '221 application

contained numerous limiting statements indicating that the disclosed invention used context free processor elements.  The same correspondence also shows that Dr. Walpert knew that a court might find the claims of the '221 application constrained by those express limiting statements.  Thus, the evidence shows, Dr. Walpert set out to draft a substitute specification that, inter alia, would reword those portions of the application so that the statements would not limit the invention to context free processor elements." (Initial Determination at 80.)  These facts are further evidence of an intent to deceive the USPTO.

37. These communications include a 13-page report from Dr. Walpert to Mr. Gluck "summarizing his conclusions, detailing the basis of his views, and providing a checklist of recommendations."  "In the report, Dr. Walpert discusses the petition to advance prosecution of the '221 application that was originally filed by attorney Robert Dorr" and "[i]n discussing the petition to advance prosecution, Dr. Walpert acknowledges that the petition contains explicit statements 'relating to, for example, 'the invention' including means for adding logical processor numbers and instruction firing times to each instruction, or having a plurality of identical and context free processors.' RX-635C at BIA105394.  According to Dr. Walpert, '[t]hese statements, under a so-called file wrapper estoppel argument, could unduly limit the scope of the claims.  Thus these limitations could be read into a claim even if the claim did not explicitly include them.' Id."  (Initial Determination at 76-77.)

38. "Dr. Walpert notes in his report that the originally-filed application also contains statements that may limit the claims."  (Initial Determination at 77.)

39. "For example, Dr. Walpert states [in his report] that:

The basis for concluding that the claims presently on file could be unduly limited are statements which have been made in the application as well as the petition which was filed before and rejected by the Patent and Trademark Office.  For

> example, the application when it refers to 'the patent invention' states '[t]he added intelligence includes a logical processor number and an instruction firing time … The results of this static allocation are executed on a system containing a plurality of identical processor elements.  These processor elements are characterized by the fact that they contain no execution state information from the execution of previous instructions, i.e., they are context free.' (application page 7, lines 19-21 and 27-33)…. Then, further, "The processor elements of the present invention are context free processors that support a RISC-like instruction set.  The term 'context free' means that the processor elements contain no state information …' (application page 14, lines 20-24).  And, in the Summary of the Invention, "The present invention … further executes the basic blocks containing the added intelligence on a system containing a plurality of identical processor elements, each of which does not retain execution state information from prior operations. Hence all processor elements are context free.' (application, page 28, lines 8-13 and 20-25).

Id. at BIA1044396."  (Initial Determination at 77.)

40. In addition, "Dr. Walpert explicitly acknowledges that '[o]ne can cite many more examples in the application and the petition which state unequivocally that the invention requires … processors which are context free.' Id. at BIA1054397.  According to Dr. Walpert,

> a Court could reasonably interpret each claims as including, implicitly or explicitly, a hardware structure which includes only context free processor elements. (I understand there are a number of claims, for example claim 18, which do not specify the processor hardware at all.  These claims, however, could still be limited, by a Court, to an application which uses, for example, context free processors.).

Id. at BIA1054396.  Thus, Dr. Walpert recommends in the report 'rewording those portions of the application which may tend to unduly limit the claims, for example, when it is said that all processor elements are context free.' Id. at BIA1054394." (Initial Determination at 77-78.)

41.  "Approximately a month and a half after Dr. Walpert sent his report to Mr. Gluck, Dr. Walpert sent Mr. Gluck a draft of the revised patent application, which appears to have done just what Dr. Walpert recommended, 'rewording … the application' in an attempt to prevent it from limiting the scope of the claims.  See RX-627C." (Initial Determination at 78.)

42.  "Dr. Walpert stated in the letter accompanying the draft that:

> [t]he description has been edited, in major respects, to remove the requirement of context free and/or identical processors, to better recognize the applicability to pipelined processing, to remove the lengthy description of the prior art, and to better clarify the description (in particular, the operation of the hardware) and the claims.

Id." (Initial Determination at 78.)

43. "Three days later, Mr. Gluck provided Dr. Walpert with various edits, granting Dr. Walpert 'artistic license to include or exclude as much as you want,' but noting that 'the primary focus of all this is to qualify the use of context-free PE's.' RX-628C." (Initial Determination at 78.)

44. "Although the evidence clearly illustrates that Dr. Walpert was well aware of the significance of the limiting statements in the originally filed application and the potential for enforcement of those limiting statements through the legal doctrines of prosecution history estoppel and disclaimer, Dr. Walpert nevertheless filed the substitute specification without bringing any of the substantive changes to the examiner's attention." (Initial Determination at 80-81.)

45. "In fact, in contrast with Dr. Walpert's statement to Mr. Gluck that the 'description has been edited, in major respects, to remove the requirement of context free and/or identical processors, to better recognize the applicability to pipelined processing, to remove the lengthy description of the prior art, and to better clarify the description (in particular, the operation of the hardware) and the claims,' Dr. Walpert only informed the examiner that the substitute specification corrected numerous typographical errors, removed the description of the prior art, and corrected certain obvious errors." (Initial Determination at 81.)

46. "Apparently not entirely satisfied by Dr. Walpert's explanation regarding the changes made to the substitute specification, the patent examiner told the applicants to comment

in their next response why the extensive revisions to the specification do not constitute new matter." (Initial Determination at 81.)

47. "The evidence will not support a claim that Dr. Walpert misunderstood the examiner's request. After receiving the second office action, Dr. Walpert wrote the then President of BIAX, Mr. Raymond Livingstone. See RX-629C. In his letter to Mr. Livingstone, Dr. Walpert noted that the patent examiner 'is requiring that we explain why, in filing the substitute specification, no new matter has been added to the application.' Id. at BXITC0625889. Dr. Walpert suggested that he and Mr. Livingstone 'should discuss the best way of meeting the Examiner's request for a 'road map' through the substitute specification regarding the new matter.' Id." (Initial Determination at 81 & n.27.)

48. "And yet, the evidence shows Dr. Walpert never provided the examiner with such an explanation. Instead, the evidence shows that Dr. Walpert attempted to placate the examiner by stating in his response to the second office action that 'if there is particular text with which the Examiner is concerned, I am more than willing to make the necessary comparisons.'" (Initial Determination at 81.)

49. "Dr. Walpert also tried to quell the examiner's new matter concerns by stating that the revisions made in the substitute specification could not constitute new matter, because all of his understanding of the invention came solely from the application as filed and because he was not an inventor and not working in the computer field as an engineer or scientist. Contrary to Dr. Walpert's statement, the evidence of record clearly shows that Dr. Walpert's understanding of the invention did not come solely from the application as filed (and that which was generally known in the art), but also from his communications and conversations with Mr. Gluck and 'various MCC summary documents.'" (Initial Determination at 81-82.)

50. "Furthermore, while Dr. Walpert's statement to the examiner that he was not an inventor or someone working in the computer field as an engineer or scientist may have been true on its face, it was nevertheless misleading as the evidence shows Dr. Walpert holds three electrical engineering degrees from MIT and is considered as someone 'above' one of ordinary skill in the art.  Walpert Tr. 289:16-21, 370:8-12."  (Initial Determination at 82.)

51. "Dr. Walpert's affirmative misrepresentations to the examiner that the substitute specification contained no new matter when in fact Dr. Walpert knowingly included several substantive changes in the substitute specification that enlarged the scope of the claims were highly material."  (Initial Determination at 83.)

52. "Buried among a mountain of change in the substitute specification, Dr. Walpert deleted various limiting statements that unequivocally indicated that the invention as originally filed only used identical context free processor elements and modified other statements to indicate that what was once required was not but a mere embodiment of the invention."  (Initial Determination at 83.)

53. "Further, the manner in which Dr. Walpert assured and reassured the examiner that no new matter was included while simultaneously side-stepping the examiner's request for an explanation of why the extensive revisions do not constitute new matter shows a significant intent to deceive."  (Initial Determination at 83.)

54. Both patents-in-suit claim priority to the '221 application that issued as the '755 patent, and both patents-in-suit issued from a series of continuation and divisional applications related to the '221 application.  Furthermore, both patents-in-suit share the same substitute specification as the '221 application.

55. Additionally, in prosecuting U.S. Patent Application Serial No. 07/372,247 (the "'247 application"), which issued as the '945 patent, Applicants changed Figure 21 by adding lines 2180 and 2182. The '247 application, a divisional application of the '221 application, was filed on June 26, 1989 shortly after Applicants received the notice of allowance of the '755 patent. In filing the '247 application, Applicants misrepresented to the USPTO that the '247 application was based on the '221 application without change. However, Applicants knew of the changes that were made to Figure 21, and Applicants' representations to the contrary were false and intentionally deceptive and misleading. Applicants also submitted the amended drawing Figure 21 in connection with the prosecution of the '313 patent, making similar misrepresentations with an intent to deceive or mislead the USPTO.

56. During prosecution of the reexaminations of the patents-in-suit, Applicants also deliberately failed to disclose to the USPTO material information pertaining to litigations involving the '628 and '313 patents. By way of example, Manual of Patent Examining Procedure ("MPEP") § 2001.06(c) requires that: "Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office." Under MPEP § 2001.06(c), relevant information can exist, for example, in "pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony."

57. The subject matter of the '628 and '313 patents was involved in the Philips ITC Investigation. For example, the discovery and pleadings from that litigation pertaining to the infringement, invalidity, and unenforceability of the patents-in-suit and related patents were material to the patentability of the '628 and '313 patents. Applicants were aware that the

materials provided in discovery and pleadings in the Philips ITC Investigation were material to the patentability of the '628 and '313 patents.  In fact, Applicants asserted the '628 and '313 patents in that litigation.  Nevertheless, Applicants failed to disclose in prosecution of the '628 and '313 reexaminations the Philips ITC Investigation or materials from that litigation.

58. Applicants committed additional acts of inequitable conduct in relation to the prosecution of the reexaminations of the patents-in-suit.  On May 11, 2007, while the '313 and '628 reexaminations were still proceeding, Administrative Law Judge Sidney Harris of the International Trade Commission issued an Initial Determination in the Philips ITC Investigation.

59. As noted above, Judge Harris found among other things that the '945 patent was not infringed, invalid for the addition of new matter, and unenforceable for inequitable conduct.  For example, Judge Harris found that the asserted claims of the '945 patent are invalid because changes made by the substitute specification that was filed in the application constituted new matter in violation of 35 U.S.C. § 132.  The parties in the Philips ITC Investigation petitioned the ITC for review of Judge Harris's May 11, 2007 Initial Determination.  On August 6, 2007, the ITC issued an Order on the parties' petitions for review.  The Commission stated: "[T]he Commission has determined to review the portion of the ALJ's determination relating to (1) the interpretation of 19 U.S.C. § 1337(a)(1)(B)(i)[concerning sanctions against BIAX]; (2) new matter and written description (including infringement relating to the "processor elements" limitation); and (3) enforceability.  On review, the Commission has determined to take no position with respect to these issues, but to affirm the ALJ's determination of no violation of section 337."  BIAX did not appeal the Commission's August 6, 2007 Order.

60. During prosecution of the reexaminations relating to the '313 and '628 patents, Applicants did not inform the USPTO of either Judge Harris's May 11, 2007 Initial

Determination or the ITC decision reviewing that Initial Determination.  Nor did it inform the

USPTO that it did not appeal the Commission's Order.  In addition, during the prosecution of the

reexamination relating to the '313 and '628 patents, Applicants did not inform the USPTO of the

following Orders that issued in the Philips ITC Investigation: (1) Order No. 13, which issued on

September 6, 2006, and related to non-infringement of the '945 patent; (2) Order No. 15, which

issued on October 4, 2006, and related to non-infringement of the '628 and '313 patents; and (3)

the Commission Decision reviewing Order No. 15, which issued on December 8, 2006.

61. Judge Harris's findings in the Philips ITC Investigation would be important to

a reasonable examiner in the reexamination of both the '628 and '313 patents.  In withholding

this information concerning the Philips ITC Investigation, Applicants failed to disclose material

information to the USPTO.

62. In addition, Applicants misrepresented the commercial success of the '628

and '313 patents during the reexamination proceedings relating to those patents.

63. In the reexamination proceedings related to the '628 and '313 patents,

Applicants submitted a Declaration by BIAX's president – Scott Livingstone.  In each case,

Applicants submitted the Declaration in response to a USPTO Office Action rejecting claims of

its patents.  Furthermore, in each case, Applicants submitted the Declaration to provide evidence

of non-obviousness by attempting to show that the invention has allegedly achieved commercial

success.

64. Additionally, in the Declaration filed in the '313 case, Scott Livingstone

stated "[t]he technology disclosed and claimed in the '313 patent has been widely adopted by the

computer industry [and] BIAX has received tens of millions of dollars in licensing revenue in

settlement of litigations in which the '313 patent has been asserted, in addition to other related

patents."  Similarly, in the Declaration filed in the '628 case, Scott Livingstone stated "[t]he technology disclosed and claimed in the '628 patent has been widely adopted by the computer industry [and] BIAX has received tens of millions of dollars in licensing revenue in settlement of litigations in which the '628 patent has been asserted, in addition to other related patents."

65. In each case, based on the Declaration filed by Mr. Livingstone, Applicants argued in its Responses to the Office Actions "that the history of successful enforcement of the claims is indicative of the non-obviousness of the claims."

66. However, Scott Livingstone's Declarations do not disclose the results of the Philips ITC Investigation where Judge Harris found the '945 patent not infringed, invalid, and unenforceable in connection with the same substitute specification filed in the '313 and '628 patent applications.  In addition, Scott Livingstone's Declaration does not disclose that BIAX voluntarily dismissed the corresponding district court case against Philips in the Eastern District of Texas.

67. Information relating to the results of the Philips litigation would have been important to a reasonable patent examiner because, among other things, it would have better informed the examiner regarding the alleged "successful enforcement" of the claims. Applicants' failure to disclose the information relating to the Philips litigation was done with intent to deceive the USPTO.

68. In addition, Applicants engaged in a pattern of deliberately failing to disclose material prior or co-pending patent applications and failing to disclose material contents of those patents and applications such as prior art.  By way of example, MPEP § 2001.06(b) states that there is a "duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-

pending United States applications which are 'material to patentability' of the application in question."

69. Notwithstanding these clear obligations, during prosecution, Applicants failed to disclose material co-pending applications concerning highly-related subject matter of which they were aware such as U.S. Patent Application Serial No. 08/914,077 (the "'077 application"). In addition, Applicants failed to disclose material contents of co-pending applications, such as prior art cited in co-pending applications, while the '313 patent was in prosecution.  By way of example, while the application for the '313 patent was pending, Applicants withheld from the USPTO numerous material prior art references that were used by the examiners in co-pending applications to reject claims directed to related subject matter, including at least U.S. Patent No. 4,742,453, entitled *"Pipeline-Controlled Information Processing System for Generating Updated Condition Code,"* issued to Shibuya ("Shibuya");  and P. Kogge, "The Architecture of Pipelined Computers," Hemisphere Publishing Corp., 1981 ("Kogge").  In addition, Applicants were aware of rejections of claims of the '077 application that they also withheld from the USPTO with an intent to deceive during the prosecution of the '313 patent.

70. For example, Applicants were aware of Shibuya at least by August 1998, when Shibuya was cited in an Office Action during prosecution of the '077 application. Additionally, Applicants were aware of Kogge at least by May 1999 when Kogge was cited in a second Office Action during the prosecution of the '077 application.

71. Under BIAX's improper assertions of infringement and improper application of the claims, Shibuya and Kogge are material to the patentability of at least claim 3 of the '313 patent.  For example, the USPTO rejected claims in the '077 application that were the same or substantially the same as claims in the '313 patent application.  Among other things, the

Examiner found that the claims were unpatentable over prior art including Shibuya and Kogge. Both the rejections and the cited prior art are material to the patentability of at least claim 3 of the '313 patent.  Additionally, Shibuya and Kogge are not cumulative of the references cited during the prosecution of the '313 patent.

72. Applicants deliberately failed to disclose the rejections and prior art to the USPTO with an intent to deceive during the prosecution of the '313 patent.  For example, the USPTO rejected claims of the '077 application as unpatentable over prior art including Shibuya and Kogge.  The '077 application Examiner made his rejection final on May 5, 1999, concluding that the "[a]pplicant's [latest] arguments . . . have been fully considered but they are not persuasive."  Applicants did not disclose to the Examiner of the '313 patent application that the proposed claims were identical or substantially identical to the proposed claims of the '077 application that the '077 application Examiner had rejected as unpatentable.  Moreover, the Applicants further confirmed their belief in the materiality of the Shibuya and Kogge reference by abandoning the '077 application with its proposed claims that were the same or substantially the same as claims in the '313 patent application.

73. Additionally, during the prosecution of the patents-in-suit, Applicants deliberately withheld material information, including but not limited to prior art, with the intent to deceive the USPTO in connection with prosecuting the '313 patent.

74. Prior to the issuance of the '313 patent, Applicants became aware of prior art material to the patentability of the '313 and '628 patents, including at least two IBM technical Disclosure Bulletins authored by T.K.M. Agerwala, entitled *New Condition Code and Branch Architecture for High Performance Processors*" and "*Improved Condition Code and Branch*

*Handling for Model 91-Like Implementation of the IBM System/370 Architecture*," dated June 1982 (collectively, "Agerwala").

75. Under BIAX's improper assertions of infringement and improper application of the claims, the Agerwala reference is material to the patentability of at least claim 3 of the '313 patent.  For example, Agerwala describes a condition code and branch architecture that uses "separately architected condition codes," and "[u]sually, the number of such condition codes will be small (2 to 8)."  As a further example, Agerwala describes that "[c]onditional branch instructions specify the architectural class of the CC and the target address."   A further example on page 137 shows exemplary instructions.  Additionally, Agerwala is not cumulative of the references cited during the prosecution of the '313 patent.

76. Applicants deliberately failed to disclose the Agerwala reference to the USPTO with an intent to deceive during the prosecution of the '313 patent.

77. Applicants engaged in a pattern and practice of deliberately withholding and misrepresenting material information during prosecution of the '628 and '313 patents with the intent to deceive the USPTO, rendering the '628 and '313 patent unenforceable for inequitable conduct.  The permeation and extent of this misconduct through Applicants' prosecution, as noted above, further confirms that Applicants acted with intent to deceive.

78. Furthermore, the '628 and '313 patents are unenforceable under the doctrine of infectious unenforceability because of Applicants' pattern of inequitable conduct during prosecution of the parent patent applications, including the '755 and '945 patents.  In addition to revealing the intent to deceive at all relevant times, this pattern infects and renders the '628 and '313 patents unenforceable.

79. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

80. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights regarding the '628 and '313 patents.

81. This is an exceptional case under 35 U.S.C. § 285 including without limitation because BIAX filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT SIX

## UNCLEAN HANDS

82. Cisco restates and incorporates by reference the allegations in paragraphs 1 through 81 of the Counterclaims.

83. BIAX has engaged in conduct comprising unclean hands rendering the patents-in-suit unenforceable in this action.  BIAX has engaged in a pattern and practice of improper activity to acquire, license, and assert the patents-in-suit in bad faith, including by making false and objectively baseless claims of patent infringement either without a reasonable investigation or basis in fact or law, or with knowledge that the patents-in-suit are invalid, unenforceable, and/or not infringed by the accused products.

84. Despite its misconduct as set forth in the counterclaims and affirmative defenses above, BIAX has continued to assert the patents-in-suit in bad faith, including against Cisco.  For example, prior to the time that BIAX asserted the patents-in-suit against Cisco, BIAX had knowledge that the patents-in-suit are invalid and unenforceable.  For instance, BIAX had knowledge that the patents-in-suit are unenforceable for inequitable conduct, including for the same reasons that Administrate Law Judge Harris found the parent patents (U.S. Patent Nos.

4,847,755 and 5,021,945) unenforceable for inequitable conduct in the matter of *In re Certain Digital Processors and Digital Processing Systems, Components Thereof, and Products Containing Same*, Investigation Number 337-TA-559 in the International Trade Commission. BIAX is aware of facts revealing numerous additional acts of inequitable conduct, rendering the patents-in-suit unenforceable, as alleged above.  As another example, BIAX had knowledge that the claims of the patents-in-suit are invalid under 35 U.S.C. §§ 112 and 132(a), including for the same reasons that Judge Harris found claims of the parent '945 patent invalid.  Despite such knowledge, BIAX continues to assert the patents in bad faith, including against Cisco. Additionally, to the extent that BIAX is claiming damages for sales occurring before any legally-proper notice was provided under 35 U.S.C. § 287, BIAX is making these assertions despite its knowledge that it has failed to comply with §287.

86. In accordance with the doctrine of unclean hands, BIAX's acts, practices, and misconduct described above have damaged Cisco and bar BIAX's enforcement of the patents-in-suit against Cisco.

86. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

87. A judicial declaration is necessary and appropriate so that Cisco may ascertain its rights regarding the patents-in-suit.

<u>**COUNT SEVEN**</u>

<u>**LACHES AND ESTOPPEL**</u>

88. Cisco restates and incorporates by reference the allegations in paragraphs 1 through 87 of the Counterclaims.

35

89. Cisco has denied that the claims of the '628 and '313 patents are enforceable and has asserted that such patents claims are unenforceable, in whole or in part, pursuant to the doctrines of laches and estoppel, including in accordance with the facts alleged above and incorporated by reference herein.

90. As a result, Cisco is entitled to judgment from this Court finding that the claims of the '628 patent and '313 patent are unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, Cisco prays for relief as follows:

a.  That the Court enter judgment in favor of Cisco, and against plaintiff BIAX;

b.  That the Court enter declaratory judgment that the patents-in-suit are not infringed by Cisco;

c.  That the Court enter declaratory judgment that the patents-in-suit are invalid;

d.  That the Court enter declaratory judgment that the patents-in-suit are unenforceable;

e.  That BIAX take nothing by its Complaint against Cisco;

f.  That the Court dismiss BIAX's Complaint in its entirety, with prejudice;

g.  That the Court find this case exceptional under 35 U.S.C. § 285, and award Cisco its costs and fees in this action, including reasonable attorneys' fees and pre-judgment interest thereon; and,

h.  That the Court grant Cisco such other and further relief as it deems just and proper.

**DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Cisco respectfully demands a jury trial of all issues triable to a jury in this action.

DATED:  April 4, 2011.                              Respectfully submitted,


_s/ Bruce A. Featherstone_
Bruce A. Featherstone
**FEATHERSTONE PETRIE DESISTO  LLP**
600 17th Street, Suite 2400-S
Denver, Colorado  80202-5424
Telephone:  303-626-7100
Facsimile:  303-626-7101
bfeatherstone@featherstonelaw.com

                              -and-

John R. Edwards
**KIRKLAND & ELLIS LLP**
950 Page Mill Road
Palo Alto, CA  94304
Telephone:   650-859-7000
Facsimile:  650-859-7500
john.edwards@kirkland.com

_Attorneys for Defendant Cisco Systems, Inc.._

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 4, 2011, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Edward J. Naidich                    ed.naidich@finnegan.com

Joseph E. Palys                      joseph.palys@finnegan.com

Rick L. Rambo                        rrambo@morganlewis.com

Roger P. Thomasch                    thomasch@ballardspahr.com

E. Robert Yoches                     bob.yoches@finnegan.com

Charles Goldberg                     cgoldberg@rothgerber.com

Scott M. Browning                    sbrowning@rothgerber.com

Trevor G. Bartel                     tbartel@rothgerber.com

Jon Bernhardt                        bernhardt@ballardspahr.com

Kenneth H. Lyman                     lymank@hallevans.com

S. Jane Mitchell                     mitchellj@hallevans.com

John R. Edwards                      john.edwards@kirkland.com

David J. Levy                        dlevy@morganlewis.com

Preetam A. Shingavi                  pshingavi@morganlewis.com

Rodger A. Sadler                     rsadler@orrick.com

Joseph A. Calvaruso                  jcalvaruso@orrick.com

Donald Daybell                       ddaybell@orrick.com

Daniel M. Reilly                     dreilly@rplaw.com

Jason M. Lynch                       jlynch@rplaw.com

And sent via email to the following:

Kurt M. Pankratz          kurt.pankratz@bakerbotts.com


*s/ Rose Cusack*
Rose Cusack