# EXHIBIT 2

## PART 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-03013-PAB-KLM


BIAX CORPORATION,

       Plaintiff,

v.

MOTOROLA SOLUTIONS, INC.,
MOTOROLA MOBILITY, INC.,
HEWLETT-PACKARD COMPANY,
CISCO SYSTEMS, INC.,
CANON U.S.A., INC.,
CANON, INC.,
BROTHER INTERNATIONAL CORPORATION,
BROTHER INDUSTRIES, LTD.,
RICOH AMERICAS CORPORATION, and
RICOH COMPANY, LTD.

       Defendants.

---

## MOTOROLA MOBILITY, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO BIAX CORPORATION'S COMPLAINT FOR PATENT INFRINGEMENT

---

Defendant Motorola Mobility, Inc. ("MMI"), hereby responds to the Complaint for Patent

Infringement ("Complaint") filed by BIAX Corporation ("BIAX"). The paragraphs of this

Answer are numbered to correspond to the numbered paragraphs of BIAX's Complaint. Any

allegations of BIAX's Complaint not expressly admitted or not specifically responded to by

MMI are denied.

- 1 -

## INTRODUCTION

1.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 1 of the Complaint and therefore denies

those allegations.

## THE PARTIES

2.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 2 of the Complaint and therefore denies

those allegations.

3.     MMI admits that it is a Delaware corporation.  MMI admits that it is registered

with the Colorado Secretary of State and has appointed The Corporation Company, 1675

Broadway Ste 1200, Denver, Colorado 80202 as its agent for service of process.  MMI admits

that it sells products in this judicial district.  MMI denies the remaining allegations contained in

paragraph 3 of the Complaint.

4.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 4 of the Complaint and therefore denies

those allegations.

5.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 5 of the Complaint and therefore denies

those allegations.

6.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 6 of the Complaint and therefore denies

those allegations.

7.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7 of the Complaint and therefore denies those allegations.

8.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of the Complaint and therefore denies those allegations.

9.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9 of the Complaint and therefore denies those allegations.

10.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 10 of the Complaint and therefore denies those allegations.

## JURISDICTION AND VENUE

11.     MMI admits that the Complaint purports to set forth a patent infringement action arising under the patent laws of the United States, Title 35 of the United States Code, but denies that BIAX's patent infringement claims have merit.

12.     MMI admits that this Court has subject matter jurisdiction over this patent action pursuant to 28 U.S.C. §§ 1331 and 1338.

13.     MMI admits that it has transacted business in this judicial district, and, for the purpose of this action, this Court has personal jurisdiction over MMI.  MMI denies the remaining allegations contained in paragraph 13 of the Complaint directed toward MMI.  MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

CHI-1799470v1

directed toward the other defendants in paragraph 13 of the Complaint and therefore denies those

allegations.

14.     MMI admits that venue is proper in this judicial district pursuant to 28 U.S.C.

§§ 1391 and 1400(b) as to MMI.  MMI is without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in paragraph 14 of the Complaint

regarding the other defendants and therefore denies those allegations.

### MMI'S RESPONSE TO BIAX'S FIRST CLAIM

15.     MMI repeats its responses to the allegations of the Complaint contained in the

foregoing paragraphs 1 through 14 as if fully set forth herein.

16.     MMI admits that U.S. Patent No. 5,517,628 ("the '628 patent") is entitled

"Computer With Instructions That Use An Address Field to Select Among Multiple Condition

Code Registers" and issued on May 14, 1996.  MMI admits that a copy of the '628 patent

appears to be attached to the Complaint as Exhibit A.  MMI denies that the '628 patent was duly

and legally issued.  MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the remaining allegations contained in paragraph 16 of the Complaint and

therefore denies those allegations.

17.     MMI admits that on August 18, 2006, the U.S. Patent and Trademark Office

("USPTO") issued an order granting the request for ex parte reexamination of the '628 patent

assigned control no. 90/008,101.  MMI admits that the USPTO issued a Reexamination

Certificate for the '628 patent on December 23, 2008.  MMI admits that a copy of this

Reexamination Certificate appears to be attached to the Complaint as Exhibit B.  MMI is without

- 4 -

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations contained in paragraph 17 of the Complaint and therefore denies those allegations.

18.     MMI denies that it has infringed or continues to infringe any valid and

enforceable claim of the '628 patent.  MMI denies the remaining allegations in paragraph 18 of

the Complaint.

19.     MMI denies that the Motorola Accused Products infringe any valid and

enforceable claim of the '628 patent.  MMI denies any remaining allegations contained in

paragraph 19 of the Complaint.

20.     MMI admits that Motorola, Inc. obtained rights under the '628 and '313 patents in

settlement of a previous litigation between Motorola, Inc. and BIAX.  MMI admits that Motorola,

Inc. sent BIAX a letter dated December 8, 2004.  MMI denies the remaining allegations

contained in paragraph 20 of the Complaint.

21.     MMI denies that it and its customers have infringed or are continuing to infringe

any valid and enforceable claim of the '628 patent.  MMI denies any remaining allegations

contained in paragraph 21 of the Complaint.

22.     MMI denies that it and consumers of its products have infringed or are continuing

to infringe any valid and enforceable claim of the '628 patent.  MMI denies any remaining

allegations contained in paragraph 22 of the Complaint.

23.     MMI denies the allegations contained in paragraph 23 of the Complaint.

24.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 24 of the Complaint and therefore denies

those allegations.

CHI-1799470v1

25.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 25 of the Complaint and therefore denies those allegations.

26.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 26 of the Complaint and therefore denies those allegations.

27.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 27 of the Complaint and therefore denies those allegations.

28.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 28 of the Complaint and therefore denies those allegations.

29.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 29 of the Complaint and therefore denies those allegations.

30.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 30 of the Complaint and therefore denies those allegations.

31.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31 of the Complaint and therefore denies those allegations.

CHI-1799470v1

32.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 32 of the Complaint and therefore denies those allegations.

33.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 33 of the Complaint and therefore denies those allegations.

34.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34 of the Complaint and therefore denies those allegations.

35.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 35 of the Complaint and therefore denies those allegations.

36.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 36 of the Complaint and therefore denies those allegations.

37.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 37 of the Complaint and therefore denies those allegations.

38.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 38 of the Complaint and therefore denies those allegations.

CHI-1799470v1

39.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 39 of the Complaint and therefore denies those allegations.

40.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 40 of the Complaint and therefore denies those allegations.

41.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 41 of the Complaint and therefore denies those allegations.

42.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 42 of the Complaint and therefore denies those allegations.

43.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 43 of the Complaint and therefore denies those allegations.

44.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 44 of the Complaint and therefore denies those allegations.

45.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45 of the Complaint and therefore denies those allegations.

CHI-1799470v1

46.     MMI is without knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations contained in paragraph 46 of the Complaint and therefore denies
those allegations.

47.     MMI is without knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations contained in paragraph 47 of the Complaint and therefore denies
those allegations.

48.     MMI is without knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations contained in paragraph 48 of the Complaint and therefore denies
those allegations.

49.     MMI is without knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations contained in paragraph 49 of the Complaint and therefore denies
those allegations.

## MMI'S RESPONSE TO BIAX'S SECOND CLAIM

50.     MMI repeats its responses to the allegations of the Complaint contained in the
foregoing paragraphs 1 through 49 as if fully set forth herein.

51.     MMI admits that U.S. Patent No. 6,253,313 ("the '313 patent") is entitled
"Parallel Processor System For Processing Natural Concurrencies and Method Therefor" and
issued on June 26, 2001. MMI admits that a copy of the '313 patent appears to be attached to the
Complaint as Exhibit C. MMI denies that the '313 patent was duly and legally issued. MMI is
without knowledge or information sufficient to form a belief as to the truth or falsity of the
remaining allegations contained in paragraph 51 of the Complaint and therefore denies those
allegations.

- 9 -

52.     MMI admits that on March 17, 2006, the USPTO issued an order granting the
request for ex parte reexamination of the '313 patent assigned control no. 90/007,922.  MMI
admits that the USPTO issued a Notice of Intent to Issue a Reexamination Certificate on May 29,
2008.  MMI admits that a copy of this Notice of Intent to Issue a Reexamination Certificate
appears to be attached to the Complaint as Exhibit D.  MMI is without knowledge or information
sufficient to form a belief as to the truth or falsity of the remaining allegations contained in
paragraph 52 of the Complaint and therefore denies those allegations

53.     MMI admits that on December 22, 2006, the USPTO issued an order granting the
request for ex parte reexamination of the '313 patent assigned control no. 90/008,156.  MMI
admits that the USPTO issued a Reexamination Certificate for the '313 patent on November 11,
2008.  MMI admits that a copy of this Reexamination Certificate appears to be attached to the
Complaint as Exhibit E.  MMI is without knowledge or information sufficient to form a belief as
to the truth or falsity of the remaining allegations contained in paragraph 53 of the Complaint
and therefore denies those allegations.

54.     MMI denies that it has infringed or continues to infringe any valid and
enforceable claim of the '313 patent.  MMI denies the remaining allegations in paragraph 54 of
the Complaint.

55.     MMI denies that the Motorola Accused Products infringe any valid and
enforceable claim of the '313 patent.  MMI denies any remaining allegations contained in
paragraph 55 of the Complaint.

56.     MMI admits that Motorola, Inc. obtained rights under the '628 and '313 patents in
settlement of a previous litigation between Motorola, Inc. and BIAX.  MMI admits that Motorola,

- 10 -

Inc. sent BIAX a letter dated December 8, 2004. MMI denies the remaining allegations contained in paragraph 56 of the Complaint.

57.     MMI denies that it and its customers have infringed or are continuing to infringe any valid and enforceable claim of the '313 patent. MMI denies any remaining allegations contained in paragraph 57 of the Complaint.

58.     MMI denies that it and consumers of its products have infringed or are continuing to infringe any valid and enforceable claim of the '313 patent. MMI denies any remaining allegations contained in paragraph 58 of the Complaint.

59.     MMI denies the allegations contained in paragraph 59 of the Complaint.

60.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 60 of the Complaint and therefore denies those allegations.

61.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 61 of the Complaint and therefore denies those allegations.

62.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 62 of the Complaint and therefore denies those allegations.

63.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 63 of the Complaint and therefore denies those allegations.

64.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 64 of the Complaint and therefore denies

those allegations.

65.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 65 of the Complaint and therefore denies

those allegations.

66.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 66 of the Complaint and therefore denies

those allegations.

67.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 67 of the Complaint and therefore denies

those allegations.

68.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 68 of the Complaint and therefore denies

those allegations.

69.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 69 of the Complaint and therefore denies

those allegations.

70.     MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 70 of the Complaint and therefore denies

those allegations.

CHI-1799470v1

71.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 71 of the Complaint and therefore denies those allegations.

72.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 72 of the Complaint and therefore denies those allegations.

73.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 73 of the Complaint and therefore denies those allegations.

74.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 74 of the Complaint and therefore denies those allegations.

75.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 75 of the Complaint and therefore denies those allegations.

76.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 76 of the Complaint and therefore denies those allegations.

77.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 77 of the Complaint and therefore denies those allegations.

CHI-1799470v1

78.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 78 of the Complaint and therefore denies those allegations.

79.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 79 of the Complaint and therefore denies those allegations.

80.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 80 of the Complaint and therefore denies those allegations.

81.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 81 of the Complaint and therefore denies those allegations.

82.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 82 of the Complaint and therefore denies those allegations.

83.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 83 of the Complaint and therefore denies those allegations.

84.     MMI is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 84 of the Complaint and therefore denies those allegations.

CHI-1799470v1

85.    MMI is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 85 of the Complaint and therefore denies

those allegations.

### MMI'S RESPONSE TO BIAX'S PRAYER FOR RELIEF

MMI denies that BIAX is entitled to be awarded any of the relief sought in BIAX's

Prayer for Relief against MMI.


### AFFIRMATIVE DEFENSES

MMI asserts the following defenses without regard to or otherwise shifting any

applicable burdens of proof.  In addition to the defenses alleged below, MMI expressly reserves

the right to allege additional defenses as they become known through the course of discovery or

otherwise.

### FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM

86.    The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE: NON-INFRINGEMENT

87.    MMI has not directly infringed, contributorily infringed, or induced infringement

of, and does not directly infringe, contributorily infringe, or induce infringement of any valid and

enforceable claim of the '628 and '313 patents.

### THIRD AFFIRMATIVE DEFENSE: INVALIDITY

88.    One or more claims of the Asserted Patents are invalid for failing to comply with

the conditions for patentability set forth in Title 35, United States Code § 101 *et. seq.*, including,

but not limited to §§ 101, 102, 103, 112 and/or 132, and under the doctrine of obviousness-type

double patenting.

## FOURTH AFFIRMATIVE DEFENSE: PROSECUTION HISTORY ESTOPPEL

89.     By reason of the prosecution of the applications that resulted in the Asserted

Patents and/or related patent applications, including by reason of statements and admissions

made by or on behalf of the applicant, BIAX is estopped from claiming infringement by MMI of

one or more claims of the Asserted Patents.

## FIFTH AFFIRMATIVE DEFENSE:  RES JUDICATA AND PRIOR SETTLEMENT

90.     BIAX previously asserted the Asserted Patents against Motorola, Inc. in Civil

Action No. 01-601 in the District of Delaware.  That action was dismissed with prejudice and

BIAX and Motorola, Inc. entered into a settlement and license agreement.  BIAX's allegations

against MMI are barred, in whole or in part, pursuant to the dismissal with prejudice, settlement,

and/or license agreement.

## SIXTH AFFIRMATIVE DEFENSE: LACHES, ESTOPPEL, WAIVER, ACQUIESCENCE

91.     BIAX's claims are barred, in whole or in part, by the doctrines of laches,

equitable estoppel, waiver, and/or acquiescence.

## SEVENTH AFFIRMATIVE DEFENSE: MARKING

92.     Upon information and belief, neither BIAX nor its licensees have marked devices

that allegedly embody any claims of the Asserted Patents pursuant to 35 U.S.C. § 287.  Prior to

being served a copy of the Complaint in this action, BIAX did not give MMI notice of BIAX's

allegations of infringement under 35 U.S.C. § 287.  BIAX is precluded from collecting any

damages from MMI for any alleged infringement prior to the filing of the Complaint.

### EIGHTH AFFIRMATIVE DEFENSE: INJUNCTION NOT WARRANTED

93.    BIAX is not entitled to injunctive relief at least because: (1) BIAX has not

suffered nor will it suffer irreparable harm because of MMI's conduct; (2) any harm to BIAX

would be outweighed by the harm to MMI if an injunction were entered; (3) BIAX has an

adequate remedy at law even if BIAX were to prevail in this action; and, (4) the public interest

would not be served by an injunction.

### NINTH AFFIRMATIVE DEFENSE: PATENT EXHAUSTION AND LICENSE

94.    BIAX's claims are barred, in whole or in part, by license and/or by the doctrine of

patent exhaustion.

### TENTH AFFIRMATIVE DEFENSE: NO WILLFUL INFRINGEMENT

95.    BIAX is not entitled to enhanced or increased damages for willful infringement,

because MMI has not engaged in any conduct that meets the applicable standard for willful

infringement.

### ELEVENTH AFFIRMATIVE DEFENSE:  PROSECUTION LACHES

96.    BIAX is equitably barred from asserting the Asserted Patents under the doctrine

of prosecution laches.

### TWELFTH AFFIRMATIVE DEFENSE: INEQUITABLE CONDUCT

97.    The Asserted Patents are unenforceable due to inequitable conduct before the

United States Patent and Trademark Office ("USPTO").  MMI restates and incorporates by

reference the allegations contained in MMI's Counterclaim Count III for Declaratory Judgment

of Unenforceability as if set forth fully herein.

- 17 -

## THIRTEENTH AFFIRMATIVE DEFENSE: PATENT MISUSE

98.    MMI restates and incorporates by reference the allegations contained in MMI's

Counterclaim Count III for Declaratory Judgment of Unenforceability as if set forth fully herein.

BIAX has engaged in patent misuse by attempting to enforce the Asserted Patents knowing that

they are invalid and unenforceable and were obtained through fraud on the USPTO.

## FOURTEENTH AFFIRMATIVE DEFENSE:  UNCLEAN HANDS

99.    The Asserted Patents are unenforceable due to unclean hands.  MMI restates and

incorporates by reference the allegations contained in MMI's Counterclaim Count III for

Declaratory Judgment of Unenforceability as if set forth fully herein.

## COUNTERCLAIMS

Defendant and Counterclaim-Plaintiff Motorola Mobility, Inc. ("MMI"), counterclaims

against Plaintiff and Counterclaim-Defendant, BIAX Corporation ("BIAX"), as follows:

## THE PARTIES

1.    MMI is a corporation incorporated under the laws of Delaware with its principal

place of business at 600 North U.S. Highway 45, Libertyville, IL 60048.

2.    Upon information and belief, BIAX is a corporation incorporated under the laws

of Colorado with its principal place of business at 1942 Broadway, Suite 404, Boulder, Colorado

80302.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over the Counterclaims pursuant to 28

U.S.C. §§ 1331, 1338, 2201, and 2202.

- 18 -

4.      This Court has personal jurisdiction over BIAX by virtue of its having consented

to the jurisdiction of this Court by filing its Complaint.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b), (c), and (d).

## FACTUAL BACKGROUND

6.      On or about December 13, 2010, BIAX filed a Complaint alleging, *inter alia*, that

Motorola, Inc. infringed and continues to infringe U.S. Patent Nos. 5,517,628 and 6,253,313

(collectively, the "Asserted Patents").

7.      On April 5, 2011, the Court substituted Motorola Solutions, Inc. and Motorola

Mobility, Inc. for Motorola, Inc.

8.      U.S. Patent No. 5,517,628 ("the '628 patent") is entitled "Computer With

Instructions That Use An Address Field to Select Among Multiple Condition Code Registers"

and issued on May 14, 1996.  BIAX claims that it owns the '628 patent.

9.      U.S. Patent No. 6,253,313 ("the '313 patent") is entitled "Parallel Processor

System For Processing Natural Concurrencies and Method Therefor" and issued on June 26,

2001.  BIAX claims that it owns the '313 patent.

## COUNTERCLAIM COUNT I: DECLARATORY JUDGMENT FOR NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 5,517,628

10.      MMI realleges and incorporates by reference paragraphs 1 through 9 of these

Counterclaims.

11.      BIAX has asserted that MMI has infringed and is infringing the '628 patent.

12.      MMI has not directly infringed, contributorily infringed, or induced infringement

of, and does not directly infringe, contributorily infringe, or induce infringement of any valid and

enforceable claim of the '628 patent.

13.    One or more claims of the '628 patent are invalid for failing to comply with the conditions for patentability set forth in Title 35, United States Code § 101 *et. seq.*, including, without limitation, §§ 101, 102, 103, 112 and/or 132.

14.    An actual and justiciable controversy exists between the parties hereto regarding the infringement and validity of the '628 patent.

15.    A judicial decision is necessary and appropriate at this time.

## COUNTERCLAIM COUNT II: DECLARATORY JUDGMENT FOR NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 6,253,313

16.    MMI realleges and incorporates by reference paragraphs 1 through 9 of these Counterclaims.

17.    BIAX has asserted that MMI has infringed and is infringing the '313 patent.

18.    MMI has not directly infringed, contributorily infringed, or induced infringement of, and does not directly infringe, contributorily infringe, or induce infringement of any valid and enforceable claim of the '313 patent.

19.    One or more claims of the '313 patent are invalid for failing to comply with the conditions for patentability set forth in Title 35, United States Code § 101 *et. seq.*, including, without limitation, §§ 101, 102, 103, 112 and/or 132, and under the doctrine of obviousness-type double patenting.

20.    An actual and justiciable controversy exists between the parties hereto regarding the infringement and validity of the '313 patent.

21.    A judicial decision is necessary and appropriate at this time.

CHI-1799470v1

## COUNTERCLAIM COUNT III: DECLARATORY JUDGMENT OF
## UNENFORCEABILITY OF THE ASSERTED PATENTS

22.     MMI restates and incorporates by reference the allegations in paragraphs 1

through 9 of the Counterclaims.

23.     The Asserted Patents are unenforceable due to inequitable conduct committed

during their prosecution.  On information and belief, the named inventors, attorneys, or agents

who prepared or prosecuted the applications leading to the issuance of the Asserted Patents, or

other persons who were substantively involved in the preparation or prosecution of these

applications were aware of information material to the patentability of the claims of the Asserted

Patents, but withheld that information from the United States Patent and Trademark Office

("USPTO") with intent to deceive the USPTO.

### Addition of New Matter

24.     The Asserted Patents are unenforceable for the same reasons the Administrative

Law Judge found the parent patents – U.S. Patent No. 4,847,755 ("the '755 patent") and U.S.

Patent No. 5,021,945 ("the '945 patent") – unenforceable for inequitable conduct in the matter of

*In re Certain Digital Processors and Digital Processing Systems, Components Thereof, and*

*Products Containing Same*, Investigation Number 337-TA-559 in the International Trade

Commission.  MMI incorporates herein by reference the May 11, 2007 Initial Determination of

Administrative Law Judge Sidney Harris ("Initial Determination"), which found the '755 and

'945 patents unenforceable due to inequitable conduct in connection with the addition of new

matter.  The inequitable conduct portions of the public version of Judge Harris' decision are

attached hereto as Exhibit A.

- 21 -

25.     Specifically, the Asserted Patents are unenforceable due to BIAX's inequitable

conduct in affirmatively misrepresenting and/or failing to disclose the addition of new matter

during the prosecution of U.S. Patent Application Serial No. 06/794,221 ("the '221 application"),

which issued as the '755 patent.  Upon information and belief, such affirmative

misrepresentations and/or failure of disclosures were made with an intent to deceive or mislead

the USPTO.

26.     On October 31, 1985, Gordon Morrison, Christopher Brooks, and Frederick

Gluck, all of MCC Development, Ltd., filed the '221 application.

27.     The '221 application is the original parent application to both of the Asserted

Patents.

28.     During the prosecution of the '221 application BIAX amended the original

disclosure through the transmittal of a substitute specification ("Substitute Specification").

BIAX transmitted the Substitute Specification to the USPTO on or about June 13, 1988, more

than two-and-a-half years after the original filing of the '221 application, but before receiving a

notice of allowance. On information and belief, the transmittal of the Substitute Specification

coincided with the hiring of new lead patent prosecution attorney, Gary A. Walpert.  BIAX

stated that the Substitute Specification was made to correct typographical errors and

inconsistencies and to delete a description of the prior art that was otherwise of record.  BIAX

further stated that "certain obvious errors, which are clear from a reading and understanding of

the application as filed, have been corrected to avoid the necessity of a later reader having to

perform the same ordinary corrective functions and to provide thereby a clearer and more

accurate description of the invention."  BIAX stated that "[n]o new matter has been added."

29.     In response to an Office Action dated September 22, 1988, Walpert filed a

declaration under 37 C.F.R. § 1.125 attesting that "no new matter has been added to the

application by the filing of or in the substitute specification."  Walpert also asserted that the

"changes, as noted in my previously filed paper, relate to the deletion of the section on prior art,

the correction of a large number of typographical errors, as well as some inconsistencies which

were apparent to me upon a normal reading of the application."

30.     Additionally, Walpert stated in his response to the examiner's office action that

"[i]nasmuch as all of my understanding of the details of the disclosed invention at that time came

from the application itself, my rearrangement and revisions of the application could not then

constitute 'new matter' since, not being an inventor and not working in the computer field as an

engineer or scientist, my own understanding (in addition to that which was generally known in

the art), came solely from the application as filed….Based on the above, it is my understanding

that no new matter has been added to the application."

31.     Contrary to BIAX's representations, the Substitute Specification added new

matter to the '221 application. For example, the term "identical processor elements" was used

repeatedly and consistently throughout the original specification, but in the Substitute

Specification, that phrase was systematically edited – either by removing the adjective "identical"

or by adding phraseology suggesting "identical" was merely a description of a particular

embodiment.  BIAX's representations that the Substitute Specification did not add new matter

and was made merely to correct typographical errors and inconsistencies were false and

intentionally misleading.

CHI-1799470v1

32.     The following findings of Judge Harris laid out in the following paragraphs

further establish that the '755 and '945 patents, and in turn the related Asserted Patents, are

unenforceable for inequitable conduct in connection with the addition of new matter:

33.     "Dr. Walpert's statements to the examiner that the substitute specification

contained no new matter were affirmative misrepresentations because the substitute specification

impermissibly broadened the scope of the originally-filed patent application in violation of the

prohibition against new matter." (Initial Determination at 75).

34.     "Dr. Walpert's failure to inform the examiner that he had removed certain

statements, and modified others in the originally filed specification that had explicitly limited the

claims to identical, context-free processor elements [was] material." (Initial Determination at 75).

35.     "A reasonable examiner would have found such information important as it goes

straight to the heart of whether the substitute specification violated the statutory prohibition

against new matter.  In fact, if there was any doubt whether such information would have been of

import to a reasonable examiner, the USPTO examiner examining the '755 patent application

specifically stated in the second office action that '[c]laims 1-6, 8, 10, 11, 14-17, 22-24, 24 [sic],

25, 26, 36-39, 60-68, and 70-76 are patentable over the art of record and would be allowable it

[sic] the substitute specification contains no new matter.' JX-6 at JCFH0682.  Furthermore, the

information would have been important to a reasonable examiner because it informs the

examiner about the proper scope of the claims and consequently the proper universe of

potentially invalidating prior art." (Initial Determination at 75-76).

36.     "There can be no question that the communications between Dr. Walpert and Mr.

Gluck illustrate that Dr. Walpert was well aware that the originally filed '221 application

- 24 -

contained numerous limiting statements indicating that the disclosed invention used context free

processor elements.  The same correspondence also shows that Dr. Walpert knew that a court

might find the claims of the '221 application constrained by those express limiting statements.

Thus, the evidence shows Dr. Walpert set out to draft a substitute specification that, inter alia,

would reword those portions of the application so that the statements would not limit the

invention to context free processor elements." (Initial Determination at 80).  These facts

establish an intent to deceive the USPTO.

37.     These communications include a 13-page report from Walpert to Gluck

"summarizing his conclusions, detailing the basis of his views, and providing a checklist of

recommendations." "In the report, Dr. Walpert discusses the petition to advance prosecution of

the '221 application that was originally filed by attorney Robert Dorr" and "[i]n discussing the

petition to advance prosecution, Dr. Walpert acknowledges that the petition contains explicit

statements 'relating to, for example, 'the invention' including means for adding logical processor

numbers and instruction firing times to each instruction, or having a plurality of identical and

context free processors.' RX-635C at BIA105394.  According to Dr. Walpert, '[t]hese

statements, under a so-called file wrapper estoppel argument, could unduly limit the scope of the

claims.  Thus these limitations could be read into a claim even if the claim did not explicitly

include them.' *Id*." (Initial Determination at 76-77).

38.     "Dr. Walpert notes in his report that the originally-filed application also contains

statements that may limit the claims." (Initial Determination at 77).

39.     "For example, Dr. Walpert states [in his report] that:  The basis for concluding

that the claims presently on file could be unduly limited are statements which have been made in

the application as well as the petition which was filed before and rejected by the Patent and

Trademark Office.  For example, the application when it refers to 'the patent invention' states

'[t]he added intelligence includes a logical processor number and an instruction firing time …

The results of this static allocation are executed on a system containing a plurality of identical

processor elements. These processor elements are characterized by the fact that they contain no

execution state information from the execution of previous instructions, i.e., they are context

free.' (application page 7, lines 19-21 and 27-33). . . . Then, further, 'The processor elements of

the present invention are context free processors that support a RISC-like instruction set. The

term 'context free' means that the processor elements contain no state information.'  (application

page 14, lines 20-24).  And, in the Summary of the Invention, 'The present invention . . . further

executes the basic blocks containing the added intelligence on a system containing a plurality of

identical processor elements, each of which does not retain execution state information from

prior operations. Hence all processor elements are context free.' (application, page 28, lines 8-13

and 20-25). *Id.* at BIA1044396."  (Initial Determination at 77).

      40.    In addition, "Dr. Walpert explicitly acknowledges that '[o]ne can cite many more

examples in the application and the petition which state unequivocally that the invention

requires . . . processors which are context free.' *Id.* at BIA1054397. According to Dr. Walpert, a

Court could reasonably interpret each claim as including, implicitly or explicitly, a hardware

structure which includes only context free processor elements. (I understand there are a number

of claims, for example claim 18, which do not specify the processor hardware at all. These

claims, however, could still be limited, by a Court, to an application which uses, for example,

context free processors.). *Id.* at BIA1054396.  Thus, Dr. Walpert recommends in the report

'rewording those portions of the application which may tend to unduly limit the claims, for example, when it is said that all processor elements are context free.' *Id.* at BIA1054394."
(Initial Determination at 77-78).

41.    "Approximately a month and a half after Dr. Walpert sent his report to Mr. Gluck, Dr. Walpert sent Mr. Gluck a draft of the revised patent application, which appears to have done just what Dr. Walpert recommended, 'rewording . . . the application' in an attempt to prevent it from limiting the scope of the claims. See RX-627C." (Initial Determination at 78).

42.    "Dr. Walpert stated in the letter accompanying the draft that [t]he description has been edited, in major respects, to remove the requirement of context free and/or identical processors, to better recognize the applicability to pipelined processing, to remove the lengthy description of the prior art, and to better clarify the description (in particular, the operation of the hardware) and the claims. *Id.*" (Initial Determination at 78).

43.    "Three days later, Mr. Gluck provided Dr. Walpert with various edits, granting Dr. Walpert 'artistic license to include or exclude as much as you want,' but noting that 'the primary focus of all this is to qualify the use of context-free PE's.' RX-628C." (Initial Determination at 78).

44.    "Although the evidence clearly illustrates that Dr. Walpert was well aware of the significance of the limiting statements in the originally filed application and the potential for enforcement of those limiting statements through the legal doctrines of prosecution history estoppel and disclaimer, Dr. Walpert nevertheless filed the substitute specification without bringing any of the substantive changes to the examiner's attention." (Initial Determination at 80-81).

CHI-1799470v1

45.   "In fact, in contrast with Dr. Walpert's statement to Mr. Gluck that the 'description has been edited, in major respects, to remove the requirement of context free and/or identical processors, to better recognize the applicability to pipelined processing, to remove the lengthy description of the prior art, and to better clarify the description (in particular, the operation of the hardware) and the claims,' Dr. Walpert only informed the examiner that the substitute specification corrected numerous typographical errors, removed the description of the prior art, and corrected certain obvious errors." (Initial Determination at 81).

46.   "Apparently not entirely satisfied by Dr. Walpert's explanation regarding the changes made to the substitute specification, the patent examiner told the applicants to comment in their next response why the extensive revisions to the specification do not constitute new matter." (Initial Determination at 81).

47.   "The evidence will not support a claim that Dr. Walpert misunderstood the examiner's request. After receiving the second office action, Dr. Walpert wrote the then President of BIAX, Mr. Raymond Livingstone. See RX-629C. In his letter to Mr. Livingstone, Dr. Walpert noted that the patent examiner 'is requiring that we explain why, in filing the substitute specification, no new matter has been added to the application.' *Id.* at BXITC0625889. Dr. Walpert suggested that he and Mr. Livingstone 'should discuss the best way of meeting the Examiner's request for a 'road map' through the substitute specification regarding the new matter.' *Id.*" (Initial Determination at 81 and n.27).

48.   "And yet, the evidence shows Dr. Walpert never provided the examiner with such an explanation. Instead, the evidence shows that Dr. Walpert attempted to placate the examiner by stating in his response to the second office action that 'if there is particular text with which

- 28 -

the Examiner is concerned, I am more than willing to make the necessary comparisons.'" (Initial

Determination at 81).

49.    "Dr. Walpert also tried to quell the examiner's new matter concerns by stating

that the revisions made in the substitute specification could not constitute new matter, because all

of his understanding of the invention came solely from the application as filed and because he

was not an inventor and not working in the computer field as an engineer or scientist.  Contrary

to Dr. Walpert's statement, the evidence of record clearly shows that Dr. Walpert's

understanding of the invention did not come solely from the application as filed (and that which

was generally known in the art), but also from his communications and conversations with Mr.

Gluck and 'various MCC summary documents.'" (Initial Determination at 81-82).

50.    "Furthermore, while Dr. Walpert's statement to the examiner that he was not an

inventor or someone working in the computer field as an engineer or scientist may have been

true on its face, it was nevertheless misleading as the evidence shows Dr. Walpert holds three

electrical engineering degrees from MIT and is considered as someone 'above' one of ordinary

skill in the art.  Walpert Tr. 289:16-21, 370:8-12." (Initial Determination at 82).

51.    "Dr. Walpert's affirmative misrepresentations to the examiner that the substitute

specification contained no new matter when in fact Dr. Walpert knowingly included several

substantive changes in the substitute specification that enlarged the scope of the claims were

highly material." (Initial Determination at 83).

52.    "Buried among a mountain of change in the substitute specification, Dr. Walpert

deleted various limiting statements that unequivocally indicated that the invention as originally

filed only used identical context free processor elements and modified other statements to

indicate that what was once required was not but a mere embodiment of the invention." (Initial Determination at 83).

53.     "Further, the manner in which Dr. Walpert assured and reassured the examiner that no new matter was included while simultaneously side-stepping the examiner's request for an explanation of why the extensive revisions do not constitute new matter shows a significant intent to deceive." (Initial Determination at 83).

54.     Both Asserted Patents claim priority to the '221 application that issued as the '755 patent and both Asserted Patents issued from a series of continuation and divisional applications related to the '221 application.

55.     Both Asserted Patents contain the same Substitute Specification as the '221 application.

56.     Therefore, BIAX's inequitable conduct in prosecuting the '221 application renders the Asserted Patents unenforceable.

### '691 and '077 Applications

57.     The acts, omissions, and misrepresentations constituting inequitable conduct include BIAX's failure to disclose material prior art and material information in connection with the prosecution of U.S. Patent Application Serial No. 08/480,691 ("the '691 application"), in violation of the duty to prosecute patent applications with the USPTO with candor, good faith, and honesty.

58.     Upon information and belief, BIAX's failure of disclosure was done with an intent to deceive or mislead the USPTO.

- 30 -

59.     On June 8, 1995, the GATT Uruguay Round Agreements Act ("URAA") became

effective, limiting patents issuing from all applications filed on that date and thereafter to no

longer than 20-year terms calculated from the filing date of the earliest-filed application from

which such patents take priority.

60.     On June 7, 1995, the day before the URAA became effective, BIAX filed multiple

divisional applications of then-pending U.S. Patent Application Serial No. 08/254,687, including

the '691 application, without immediately proposing any new claims for examination.

61.     The filing of the '691 application before the URAA effective date allowed BIAX

to reserve a patent application benefiting from a pre-URAA filing date years before BIAX even

knew what proposed claims it wanted to prosecute in it.

62.     Initially, the '691 application contained a single claim, which the examiner

rejected for double patenting.  In its May 27, 1997 response to that Office Action, about two

years after the '691 application was filed, BIAX first submitted new proposed claims for

examination in the application.  These newly proposed claims were numbered 74-98.

63.     The patent examiner subjected proposed claims 74-98 to a restriction requirement

and rejected those claims, deeming them non-elected.  In response, BIAX filed U.S. Patent

Application Serial No. 08/914,077 ("the '077 application"), as a divisional of the '691

application, in order to circumvent the restriction requirement.  The claims proposed in the '077

application (also numbered 74-98) were identical to the corresponding claims in the '691

application.

64.     Patent Examiner William Treat rejected claims 74-98 of the '077 application as

unpatentable.  Among other things, he found that they were unpatentable over prior art including

- 31 -

(1) U.S. Patent No. 4,742,453, entitled "Pipeline-Controlled Information Processing System for

Generating Updated Condition Code," issued to Shibuya ("Shibuya"); (2) H. Schorr, *Design*

*Principles for a High-Performance System*," Proc. Of the Symposium on Computers and

Automata, New York, NY, April 13-15, 1971, Polytechnic Press of the Polytechnic Institute of

Brooklyn, NY ("Schorr"); and (3) P. Kogge, *The Architecture of Pipelined Computers*,"

Hemisphere Publishing Corp., 1981 ("Kogge").

65.     Despite repeated efforts by the applicants to convince Examiner Treat that

proposed claims 74-98 were patentable, Examiner Treat made his rejection final on May 5, 1999,

concluding that the "[a]pplicant's [latest] arguments … have been fully considered but they are

not persuasive."

66.     BIAX was therefore fully aware of the Shibuya and Kogge references and their

materiality.  After the claims in the '077 application were finally rejected, BIAX abandoned that

application.

67.     On or about September 17, 1999, BIAX succeeded in overturning the restriction

requirement on the proposed claims 74-98 of the '691 application.  The USPTO then assigned a

different patent examiner, Examiner Meng-Ai An, to examine all of the claims proposed in the

'691 application on their merits, including claims 74-98.

68.     BIAX did not disclose to Examiner An that proposed claims 74-98 of the '691

application were identical to proposed claims 74-98 of the '077 application, which Examiner

Treat rejected as unpatentable.

CHI-1799470v1

69.     Examiner An was not aware of the rejection by Examiner Treat of the claims in the '077 application and, upon information and belief, BIAX intentionally failed to disclose that information to her.

70.     BIAX also failed to disclose to Examiner An the Shibuya and Kogge references that Examiner Treat had relied upon.

71.     A reasonable patent examiner would have considered the prosecution history of the '077 application, particularly Examiner Treat's rejections, material to the patentability of the claims in the '313 Patent.

72.     A reasonable patent examiner also would have considered the undisclosed prior art material to the patentability of the claims in the '313 patent.

73.     The undisclosed prior art was not cumulative of any other prior art of record in the prosecution of the '691 application.

74.     BIAX's lead patent attorney, Gary Walpert, was the attorney of record for the '077 and '691 applications and had full knowledge of Examiner Treat's earlier rejection of the claims.

75.     BIAX failed to disclose additional prior art to Examiner An in connection with the prosecution of the '313 patent.

76.     During prosecution of the '691 application, BIAX was aware of the existence of two IBM technical Disclosure Bulletins authored by T.K.M. Agerwala, entitled "New Condition Code and Branch Architecture for High Performance Processors" and "Improved Condition Code and Branch Handling for Model 91-Like Implementation of the IBM *System/370 Architecture*," dated June 1982 (collectively, "Agerwala").

- 33 -

77.     The Agerwala references anticipate and/or render obvious the claims of the
Asserted Patents.

78.     BIAX did not disclose these material prior art references to either Examiner An or
Examiner Treat.

79.     A reasonable patent examiner would have considered the undisclosed prior art
material to the patentability of the claims in the '313 patent.

80.     The undisclosed prior art was not cumulative of any other prior art of record in
the prosecution of the '691 application.

81.     Upon information and belief, BIAX failed to disclose all of this information to the
examiner of the '691 application with an intent to deceive or mislead the examiner, in direct
contravention of the rules of the USPTO and BIAX's duty to prosecute patent applications with
candor, good faith, and honesty.

### '313 and '628 Reexamination Proceedings

82.     BIAX committed additional acts of inequitable conduct in relation to the
prosecution of the reexaminations of the Asserted Patents.

83.     On December 8, 2005, BIAX filed a complaint with the International Trade
Commission alleging patent infringement by Philips Semiconductor ("the Philips ITC
Investigation"). At about the same time, on December 9, 2005, BIAX filed a case in the Eastern
District of Texas alleging patent infringement against Philips Semiconductor.  On February 8,
2006, the court in the Eastern District of Texas entered an order staying the district court
litigation pending a decision in the Philips ITC Investigation.

84.     On February 9, 2006, Intel Corporation filed a Request for Ex Parte Reexamination of the '313 patent. Intel noted in the request that the '313 patent was currently being asserted against it in the Eastern District of Texas.  The Request was assigned control no. 90/007,922 ("the '7922 reexamination proceeding").

85.     The Request for reexamination in the '7922 reexamination proceeding listed the following litigation related to the patent: BIAX v. Intel in the Eastern District of Texas;  BIAX v. Apple in the District of Delaware; BIAX v. Texas Instruments in the District of Colorado (and companion case against TI in the ITC); and BIAX v. Philips in the Eastern District of Texas (and companion ITC case).

86.     On March 2, 2006, a litigation search was conducted in the '7922 reexamination proceeding that returned the following litigations:  BIAX v. Philips in the Eastern District of Texas; BIAX v. Intel in the Eastern District of Texas; and BIAX v. Texas Instruments in the District of Colorado.

87.     On March 17, 2006, the USPTO granted the Request for Ex Parte Reexamination in the '7922 reexamination proceeding.

88.     On November 22, 2006, Intel Corporation perfected a second Request for Ex Parte Reexamination of the '313 patent that was based on prior art that was different from its first request.  The Request was assigned control no. 90/008,156 ("the '8156 reexamination proceeding").

89.     The Request for reexamination in the '8156 reexamination proceeding listed the following litigation related to the patent:  BIAX v. Intel in the Eastern District of Texas; BIAX v. Apple in the District of Delaware; BIAX v. Texas Instruments in the District of Colorado (and

- 35 -

companion case against TI in the ITC); and BIAX v. Philips in the Eastern District of Texas (and

companion ITC case).

90.     On December 21, 2006, a litigation search was conducted in the '8156

reexamination proceeding that returned the following litigations:  BIAX v. Fujitsu in the Eastern

District of Texas; BIAX v. Philips in the Eastern District of Texas; BIAX v. Intel in the Eastern

District of Texas; and BIAX v. Texas Instruments in the District of Colorado.

91.     On December 22, 2006, the USPTO granted the Request for Ex Parte

Reexamination in the '8156 reexamination proceeding.  And on October 12, 2007, the USPTO

issued a decision merging the two reexamination proceedings related to the '313 patent.

92.     On June 20, 2006, Intel Corporation filed a Request for Ex Parte Reexamination

of the '628 patent.  Intel noted in the request that the '628 patent was currently being asserted

against it in the Eastern District of Texas.  The request was assigned control no.  90/008,101

("the '8101 reexamination proceeding").

93.     The Request for reexamination in the '8101 reexamination proceeding listed the

following litigation related to the patent:  BIAX v. Intel in the Eastern District of Texas; BIAX v.

Apple in the District of Delaware; BIAX v. Texas Instruments in the District of Colorado (and

companion case against TI in the ITC); and BIAX v. Philips in the Eastern District of Texas (and

companion ITC case).

94.     On August 2, 2006, a litigation search was conducted in the '8101 reexamination

proceeding that returned the following litigations:  BIAX v. Philips in the Eastern District of

Texas; BIAX v. Intel in the Eastern District of Texas; and BIAX v. Texas Instruments in the

District of Colorado.

- 36 -

95.     On August 18, 2006, the USPTO granted the Request for reexamination in the '8101 reexamination proceeding.

96.     The Philips ITC Investigation, BIAX's case against Intel in the Eastern District of Texas, and the reexaminations of the '313 and '628 patents all proceeded concurrently.

97.     On May 11, 2007, while the '313 and '628 reexaminations were still proceeding, Administrative Law Judge Sidney Harris of the International Trade Commission issued an Initial Determination in the Philips ITC Investigation.

98.     In that Initial Determination, Judge Harris found that the '945 patent was not infringed, invalid for the addition of new matter, and unenforceable for inequitable conduct.

99.     In the Initial Determination, Judge Harris found that the claimed "processor elements" of the '221 application were limited to processor elements that are "identical" and "context free."

100.    In the Initial Determination, Judge Harris found that BIAX impermissibly tried to broaden the scope of the invention to include processor elements that are not identical and context free.

101.    In the Initial Determination, Judge Harris found that the asserted claims of the '945 patent were invalid because changes made by the substitute specification that was filed in the application constituted new matter in violation of 35 U.S.C. § 132.

102.    In the Initial Determination, Judge Harris found that Walpert's statements to the Examiner that the substitute specification contained no new matter were affirmative misrepresentations.

CHI-1799470v1

103.     In the Initial Determination, Judge Harris found that Walpert's failure to inform
the examiner that he had removed certain statements, and modified others, in the originally filed
application that explicitly limited the claims to identical, context free processor elements was
material.

104.     In the Initial Determination, Judge Harris found that Walpert's conduct showed a
"significant intent to deceive."

105.     The parties in the Philips ITC Investigation petitioned the ITC for review of Judge
Harris's May 11, 2007 Initial Determination.  On August 6, 2007, the ITC issued an Order on the
parties' petitions for review.  The Commission stated:  "[T]he Commission has determined to
review the portion of the ALJ's determination relating to (1) the interpretation of 19 U.S.C. §
1337(a)(1)(B)(i) [concerning sanctions against BIAX]; (2) new matter and written description
(including infringement relating to the "processor elements" limitation); and (3) enforceability.
On review, the Commission has determined to take no position with respect to these issues, but
to affirm the ALJ's determination of no violation of section 337."

106.     BIAX had the option to appeal the Commission's August 6, 2007, Commission
Order but it did not do so.

107.     During prosecution of the reexaminations relating to the '313 and '628 patents,
BIAX did not inform the USPTO of either Judge Harris's May 11, 2007 Initial Determination or
the ITC decision reviewing that Initial Determination.  Nor did BIAX inform the USPTO that it
did not appeal the Commission Decision.

108.     In addition, during the prosecution of the reexamination relating to the '313 and
'628 patents, BIAX did not inform the USPTO of the following Orders that issued in the Philips

ITC Investigation:  (1) Order No. 13, which issued on September 6, 2006, and related to non-infringement of the '945 patent; (2) Order No. 15, which issued on October 4, 2006, and related to non-infringement of the '628 and '313 patents; and (3) the Commission Decision reviewing Order No. 15, which issued on December 8, 2006.

109.    The '313 and '628 patents claim priority to the applications that issued into the '755 and '945 patents.

110.    They are all based off the same specification, which was originally filed with the application that issued into the '755 patent.

111.    The inventions claimed in the '628 and '313 patents are required to be disclosed in the original application that eventually issued into the '755 patent.

112.    In addition, both the '628 and '313 patents contain the "processor element" claim limitation.

113.    Accordingly, Judge Harris's findings in the Philips ITC case would be important to a reasonable examiner in the reexamination of both the '628 and '313 patents.

114.    In withholding this information, BIAX failed to disclose material information to the USPTO.

115.    During the reexaminations, the USPTO repeatedly informed BIAX of its duty to disclose information from related litigations involving the patents.  For example, in the Orders granting reexamination of both the '7922 reexamination proceeding and the '8101 reexamination proceeding the USPTO reminded the patent owner of its continuing responsibility under 37 C.F.R. 1565(a) to apprise the office of any litigation activity, or other prior or concurrent proceeding, involving the patents throughout the course of this reexamination proceeding.

- 39 -

116.     Throughout the reexamination proceedings, BIAX would disclose certain information from other litigation, while at the same time withholding other information.

117.     For example, on March 14, 2007, BIAX filed a "Notice of Concurrent Litigation and Reexamination Proceedings" in both reexaminations.  The Notice listed the concurrent litigation against Intel in the Eastern District of Texas and the other reexamination.  But the notice did not list concurrent litigation against numerous defendants, including the Philips ITC Investigation and a concurrent reexamination proceeding involving another related BIAX patent.

118.     In November 2006, BIAX filed an Information Disclosure Statement in each of the reexaminations that listed court documents from various litigations, including the Philips ITC Investigation, but omitted the September 6, 2006 Initial Determination (Order 13) from the Philips ITC case, in which Judge Harris found non-infringement of the '945 patent.  The Information Disclosure Statement did, however, list a similar Order from a different Investigation "Order No. 18: Initial Determination Granting Respondents Motion for Summary Determination."

119.     In addition, in prosecuting the reexaminations, BIAX specifically relied on some court findings, while withholding others.  For example, in a January 28, 2008 Amendment in the '7922 and '8156 reexamination proceedings, BIAX cited and quoted a claim construction order from the BIAX v. Intel case in the Eastern District of Texas, while at the same time withholding decisions from the Philips ITC Investigation that also construed the claims.

### Prosecution Laches

120.     The '221 application included a draft specification and seventy-three proposed claims.

- 40 -

121.    The specification of the '221 application described a computer system based on a

hardware/software relationship.

122.    In an August 27, 1987 Office Action, the claims of the '221 application were

subjected to a restriction requirement listing four groups of inventions.

123.    In a September 21, 1987 Response, the applicants elected to pursue the claims of

the first invention: "an architectural structure of a parallel processor system."

124.    The '755 patent eventually issued on July 11, 1989.

125.    On June 6, 1994, almost nine years after filing the '221 application, BIAX filed

divisional application 08/254,687 ("the '687 application), which eventually issued into the '628

patent – one of the Asserted Patents.

126.    The '687 application was the first application in the family to include claims that

related to the use of multiple condition code registers.

127.    On June 7, 1995, BIAX filed another divisional application, the '691 application,

which ultimately issued as the '313 patent – the other Asserted Patent.

128.    BIAX filed only one claim with the initial '691 divisional application, a claim

related to TOLL software.

129.    On May 30, 1997, eleven and a half years after filing the original '221 application,

BIAX cancelled that claim and added new claims related to condition values.

130.    The examiner rejected these added claims on July 17, 1997, on the ground that

they were directed to a non-elected invention in the original application.

131.    In doing so, the examiner explained that the new condition-code-register claims

were independent and distinct from the original TOLL-related claim that the applicants had filed.

CHI-1799470v1

132.    On August 22, 1997, BIAX reinstated the original claim and added a claim

dependent on the original TOLL claim, which added the concept of multiple condition code

registers.

133.    On December 2, 1997, the examiner allowed the reinstatement of the original

claim and its new dependent claim, but again rejected the condition-code-register claims as

claiming an independent and distinct invention.

134.    BIAX sought review of this decision on December 31, 1997, but the USPTO

Technology Center affirmed the rejection.  BIAX purportedly filed a notice of appeal on

September 25, 1998, although the USPTO did not receive that notice.

135.    On December 10, 1998, BIAX re-filed the notice of appeal and sought expedited

review.

136.    In seeking to overturn the examiner's rejection, BIAX argued that if it was not

allowed to include these claims with the present application, it would have to file a divisional

application, which would not have the advantage of the transitional provisions under the URAA.

137.    The URAA provisions would grant a patent term of 17 years from the date of

issuance.  Under the non-transitional provisions that would govern a new divisional application,

the patent term would be 20 years from the filing date in 1985, leaving only eight years (at the

time) on the term.

138.    The USPTO Special Projects Examiner rejected BIAX's argument on April 5,

1999.  He noted: "While petitioner is apparently concerned about the loss of term  should a

continuing application be necessary to get the claims in question considered, the underlying

twelve year delay necessitating such an action is that of the petitioner, not the PTO."

139.   BIAX again appealed, this time to the Directory of the Technology Center.

140.   The Director concluded that the examiner had not sufficiently explained why the two sets of claims were independent and distinct and therefore vacated the withdrawal.

141.   When the application was returned, a new examiner substituted for the one who had previously rejected the application.  That new examiner allowed the condition-code-register claims after conducting phone interviews with BIAX, and the '313 patent issued on June 26, 2001.

142.   BIAX's delay in prosecuting the issued claims of the Asserted Patents is unreasonable and unexplained.

143.   The Asserted Patents are unenforceable due to prosecution laches.

144.   An actual and justiciable controversy exists between the parties hereto regarding the unenforceability of the Asserted Patents.

145.   A judicial decision is necessary and appropriate at this time.

## MMI'S JURY DEMAND

MMI hereby demands a trial by jury on all issues so triable in this case.

## MMI'S PRAYER FOR RELIEF

WHEREFORE, MMI respectfully requests that:

A.   BIAX take nothing by virtue of the Complaint;

B.   the Complaint be dismissed with prejudice;

C.   the Court enter a judgment declaring that MMI has not infringed, and is not infringing, any valid and enforceable claim of the '628 or '313 patents;

D.   the Court enter a judgment that the claims of the '628 and '313 patents are invalid;

- 43 -

E.      the Court enter a judgment that the '628 and '313 patents are unenforceable;

F.      the Court declare this case exceptional and award MMI its costs, expenses, and

attorneys' fees pursuant to 35 U.S.C. § 285 and all other applicable statutes, rule and common

law; and

G.      the Court award MMI such other and further relief as the Court may deem just

and proper.


Dated: April 19, 2011                           Respectfully submitted,


                                                s/ Kenneth H. Lyman
                                                Kenneth H. Lyman
                                                S. Jane Mitchell
                                                HALL & EVANS, LLC
                                                1125 Seventeenth Street, Suite 600
                                                Denver, CO 80202
                                                Phone:  (303) 628-3300
                                                Fax:    (303) 293-3231
                                                E-mail: lymank@hallevans.com
                                                        mitchellj@hallevans.com

                                                and

                                                David L. Witcoff
                                                Marc S. Blackman
                                                JONES DAY
                                                77 W. Wacker Drive, Suite 3500
                                                Chicago, IL 60601
                                                Phone:  (312) 782-3939
                                                Fax:    (312) 782-8585
                                                E-mail: dlwitcoff@jonesday.com
                                                        msblackman@jonesday.com

                                                Attorneys for Defendant
                                                Motorola Mobility, Inc.

CHI-1799470v1

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 19th day of April, 2011, I electronically filed the foregoing Motorola Mobility, Inc.'s Answer, Affirmative Defenses and Counterclaims to BIAX Corporation's Complaint for Patent Infringement with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| *Attorneys for Plaintiff* *BIAX Corporation:* | *Attorneys for Plaintiff* *BIAX Corporation:* | *Attorneys for Plaintiff* *BIAX Corporation:* |
|---|---|---|
| Charles Goldberg, Esq. Scott M. Browning, Esq. Trevor G. Bartel, Esq. Rothgerber, Johnson & Lyons, LLP-Denver 1200 17th Street, Suite 3000 Denver, CO 80202-5855 Phone: (303) 628-9000 Fax:  (303) 623-9222 Email:  cgoldberg@rothgerber.com    sbrowning@rothgerber.com    tbartel@rothgerber.com | Edward J. Naidich, Esq. E. Robert Yoches, Esq. Michael V. Young, Esq. Finnegan, Henderson, Farabow, Garrett   & Dunner LLP-DC 901 New York Avenue, NW Washington, DC 20001 Phone: (202) 408-4000 Fax:  (202) 408-4400 Email:  ed.naidich@finnegan.com    Bob.yoches@finnegan.com    Michael.young@finnegan.com | Joseph E. Palys, Esq. Finnegan, Henderson, Farabow, Garrett   & Dunner LLP-Reston Two Freedom Square 11955 Freedom Drive Reston, VA  20190-5675 Phone: (571) 203-2700 Fax:  (202) 408-4400 Email:  joseph.palys@finnegan.com |
| *Attorneys for Defendants* *Brother International Corporation and Brother Industries, Ltd.:* | *Attorneys for Defendants* *Brother International Corporation and Brother Industries, Ltd.:* | *Attorneys for Defendants* *Brother International Corporation and Brother Industries, Ltd.:* |
| Kurt M. Pankratz, Esq. Baker Botts, LLP-Dallas 2001 Ross Avenue, Suite 600 Dallas, TX  75201-2980 Phone: (214) 953-6584 Fax:  (214) 661-4584 Email:  kurt.pankratz@bakerbotts.com | David M. Schlitz, Esq. Baker Botts, LLP-Washington, DC The Warner 1299 Pennsylvania Avenue, N.W. Washington, DC  20004 Phone: (202) 639-7700 Email:  david.schlitz@bakerbotts.com | Daniel M. Reilly, Esq. Jason M. Lynch, Esq. Marisa B. Hudson-Arney, Esq. Reilly Pozner, LLP 1900 Sixteenth Street, Suite 1700 Denver, CO  80202 Phone: (303) 893-6100 Email:  dreilly@rplaw.com    jlynch@rplaw.com    mhudsonarney@rplaw.com |
| *Attorneys for Defendants* *Canon U.S.A., Inc. and Canon, Inc.:* | *Attorneys for Defendants* *Canon U.S.A. and Canon, Inc.:* | *Attorneys for Defendant* *Cisco Systems, Inc.:* |
| Jon Bernhardt, Esq. Roger P. Thomasch, Esq. Ballard Spahr, LLP-Denver 1225 Seventeenth Street, Suite 2300 Denver, CO  80202-5596 Phone: (303) 292-2400 Fax:  (303) 296-3956 Email:  bernhardt@ballardspahr.com    thomasch@ballardspahr.com | Rodger A. Sadler, Esq. Joseph A. Calvaruso, Esq. Donald E. Daybell, Esq. Orrick, Herrington & Sutcliffe, LLP 51 West 52nd Street New York, NY  11019-6142 Phone: (212) 506-5000 Fax:  (212) 506-5151 Email:  rsadler@orrick.com    jcalvaruso@orrick.com    ddaybell@orrick.com | John R. Edwards, Esq. Kirkland & Ellis LLP-Palo Alto 950 Page Mill Road Palo Alto, CA  94304 Phone: (650) 859-7000 Fax:  (650) 859-7500 Email:  john.edwards@kirkland.com |

CHI-1799470v1

CHI-1799470v1

| Attorneys for Defendant<br>Hewlett-Packard Company: | Attorneys for Defendants<br>Ricoh Americas Corporation and<br>Ricoh Company, Ltd.: | |
|---|---|---|
| Rick L. Rambo, Esq.<br>David J. Levy, Esq.<br>Preetam A. Shingavi, Esq.<br>Morgan, Lewis & Bockius, LLP-<br>  Houston<br>1000 Louisiana Street, Suite 4000<br>Houston, TX 77002<br>Phone: (713) 890-5175<br>Fax:    (713) 890-5001<br>Email:  rrambo@morganlewis.com<br>    dlevy@morganlewis.com<br>    pshingavi@morganlewis.com | Bruce A. Featherstone, Esq.<br>Featherstone Petrie DeSisto, LLP<br>600 17th Street, Suite 2400-S<br>Denver, CO 80202-5424<br>Phone: (303) 626-7100<br>Fax:    (303) 626-7101<br>Email:  bfeatherstone@featherstonelaw.com | |

and hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participant in the manner (mail, hand delivery, etc.) indicated by the non-participant's name:

None

        s/ Therese Curtin, Secretary to
        Kenneth H. Lyman, Esq.
        S. Jane Mitchell, Esq.
        Hall & Evans, L.L.C.
        1125 Seventeenth Street, Suite 600
        Denver, CO 80202-2052
        Phone No.:  303-628-3300
        Fax No. :   303-293-3231
        E-mail:      lymank@hallevans.com
                mitchellj@hallevans.com

        Attorneys for Defendant
        Motorola Mobility, Inc.

CHI-1799470v1